## BARNETT v. BARNETT.

No. 23307. Opinion Filed June 7, 1932.

Rehearing Denied July 19, 1932.

Barnett for divorce and custody of the children, alleging extreme cruelty. Defendant's answer and cross-petition, alleging adultery, prays for divorce, custody of the children, and alimony. The trial court rendered judgment in favor of the defendant, granting him a decree of absolute divorce, the custody of the two minor children, and further decreeing to the defendant the sum of $15,000 as alimony.

Plaintiff appeals to this court only from that portion of the judgment awarding defendant the custody of the two minor children and the alimony. Parties herein are referred to as they appeared in the district court of McIntosh county, Okla.

Plaintiff alleges 18 assignments of error, but chooses to discuss them under two propositions. The first proposition of law urges that, "Under the Constitution and laws of this state in a divorce action, no court has the power and authority to render a lawful and valid judgment in favor of a husband and against a wife for alimony."

In support of this contention, plaintiff cites the cases of Pauly v. Pauly, 14 Okla. 2, 76 P. 148, and Poloke v. Poloke, 37 Okla. 70, 130 P. 535. In the latter case this court held that the power of the court to grant alimony is governed by section 6179. Comp. L. 1909, and after setting out said section in its entirety, said:

"It clearly appears from the reading of this section that it was the intention of the Legislature to cover the entire subject of disposition of property when a divorce is granted. No mention is made of the husband's right to alimony, and it cannot be presumed that it was the intention of the Legislature to allow him alimony."

The section referred to is separable in three divisions: The first division controls where the decree is granted the wife on account of the fault of the husband; the second controls as to the jointly acquired property and is applicable when the decree is granted either the husband or the wife; and the third subdivision is applicable where the decree is granted the husband on account of the fault of the wife.

The third subdivision of section 6179, Comp. L. 1909, at the time the Poloke Case, supra, construed said section, read as follows:

"But in case of a finding by the court that such divorce should be granted on account of the fault or aggression of the wife, the court may, in its discretion, set apart such a portion of the wife's separate estate as may seem proper for the support of the children, issue of the marriage."

R. S. Cate, Turner & Turner, and H. B. Parris, for plaintiff in error.

Clark Nichols, Jack Nichols, Ben F. Williams, Homer Cowan, and Thomas R. Benedum, for defendant in error.

CULLISON, J. Plaintiff, Jeannetta Barnett, filed suit against the defendant George

It therefore appears that the Poloke decision, supra, correctly construed the law at the time it was decided, February 18, 1913, because at that date there was no statute in the state of Oklahoma giving the husband the right of alimony. However, section 6179, Snyder's Compiled Laws of 1909, supra, was revised by the Harris-Day Code Commission, and became effective in its changed form on the 17th day of May, 1913, at the time the Revised Laws of 1910 became effective (S. L. 1913, ch. 75, p. 116), as section 4969, Revised Oklahoma Statutes, 1910. The same now appears as section 508, C. O. S. 1021, and that portion pertinent to the case at bar is materially different by reason of the aforesaid revision.

Subdivision 3, heretofore quoted, now reads as follows:

"In case of a finding by the court that such divorce should be granted on account of the fault or aggression of the wife, the court may set apart to the husband and for the support of the children, issue of the marriage, such portion of the wife's separate estate as may be proper." (Sec. 508, C. O. S. 1921.)

We think the intent of the Legislature in adding the words "to the husband" was to eliminate distinctions in favor of the wife and to place both parties as nearly as possible on the same footing. Other and additional changes of like nature in several statutory provisions at the same time strenthen our opinion that it was the legislative intent to make the statutes relating to alimony equally applicable to both parties as a matter of common justice, and to cover the numerous cases where all the property is in the wife's name. For example, section 6177, Snyder's Comp. Laws of Oklahoma, 1909, in effect at the time of the Poloke decision, read as follows:

"After a petition has been filed in an action for divorce and alimony, or for alimony alone, the court, or a judge thereof in vacation, may make and enforce by attachment such order to restrain the disposition of the property of the parties or of either of them, and for the use, management, and control thereof, or for the control of the children and support of the wife during the pendency of the action, as may be right and proper; and may also make such order relative to the expenses of the suit as will insure to the wife an efficient preparation of her case; and on granting a divorce in favor of the wife or refusing one on the application of the husband, the court may require the husband to pay such reasonable expenses of the wife in the prosecution or defense of the action as may be just and proper, considering the respective parties and the means and property of each."

The revisers of the Code amended this section to read (section 4967, R. L. 1910, effective May 17, 1913) as the same now appears as section 506, C. O. S. 1921:

"After a petition has been filed in an action for divorce and alimony, or for alimony alone, the court, or a judge thereof in vacation, may make and enforce by attachment such order to restrain the disposition of the property of the parties or of either of them, and for the use, management and control thereof, or for the control of the children and support of the wife or husband during the pendency of the action, as may be right and proper; and may also make such order relative to the expenses of the suit as will insure an efficient preparation of the case: and on granting a divorce in favor of the wife or refusing one on the application of the husband, the court may require the husband or wife to pay such reasonable expenses of the other in the prosecution or defense of the action as may be just and proper, considering the respective parties and the means and property of each."

A comparison between the two foregoing legislative enactments discloses that the Legislature added the words "or husband" at the end of the phrase "or for the control of the children and support of the wife, * * *" and later in the earlier statute the words "to the wife" were omitted from the phrase, "and may also make such order relative to the expenses of the suit as will insure * * * an efficient preparation of her case," in order that the provisions might apply to either the husband or wife. Again, in said section the final clause, to wit,

"the court may require the husband to pay such reasonable expenses of the wife in the prosecution or defense of the action as may be just and proper, considering the respective parties and the means and property of each"

—was amended to read as follows:

"the court may require the husband or wife to pay such reasonable expenses of the other in the prosecution or defense of the action as may be just and proper, considering the respective parties and the means and property of each."

The addition of the words "or wife" following the word "husband," together with amending the words "expenses of the wife" to read "expenses of the other," clearly evidences the legislative intent to put both spouses on an equal footing.

As a final illustration, section 6184, Comp. L. 1909, read as follows:

"Section 6184: Alimony: The wife may obtain alimony from the husband without a divorce, in an action brought for that purpose in the district court, for any of the causes for which a divorce may be granted.

The husband may make the same defense to such action as he might to an action for divorce, and may, for sufficient cause, obtain a divorce from the wife in such action."

Upon revision, the same became section 4975, R. L. 1910, effective May 17, 1913, and now appears as section 514, C. O. S. 1921, as follows:

"The wife or husband may obtain alimony from the other without a divorce, in an action brought for that purpose in the district court, for any of the causes for which a divorce may be granted. Either may make the same defense to such action as he might to an action for divorce, and may, for sufficient cause, obtain a divorce from the other in such action."

It will be observed that the statutory provision permitting a wife to obtain alimony from the husband, even without a divorce, was revised to apply equally to the husband. This provision, in connection with the other provisions cited, conclusively shows that the courts of Oklahoma have the power and authority to render a lawful and valid judgment in favor of the husband and against the wife for alimony where the divorce is decreed the husband by reason of the fault or aggression of the wife.

Plaintiff raises some question as to the authenticity of the revisions cited, supra. It has been held many times by this court that the Revised Laws 1910, commonly known as the "Harris-Day Code," including new legislation suggested by the codifiers and adopted by the Legislature of this state by chapter 39, Sess. Laws 1910-11, as amended by chapter 75, Sess. Laws 1913, is the established law of this state regularly and constitutionally adopted. Herndon v. State, 16 Okla. Cr. 586, 185 P. 701; Green v. State, 33 Okla. Cr. 268, 243 Pac. 533; Quick v. City of Fairview, 144 Okla. 231, 291 P. 95; State ex rel. Hatfield v. Moreland, 152 Okla. 37, 3 P. (2d) 803.

The record discloses that the defendant and his wife had lived together as husband and wife for over 15 years. Each had allotments when they were married. Later, oil was discovered on the allotment of the plaintiff and from her vast income she bought more land and the defendant looked after it and helped work and care for the property of the plaintiff faithfully for many years. The record discloses that he was a model husband. At the time the petition was filed there were two children, aged seven and nine. The trial court found, in substance, that George Barnett had given 15 of the best years of his life in making and keeping a Christian home together for himself and family, until broken up by the adulterous acts of the wife, and that he

now found himself destitute and dependent upon the judgment of the courts for existence by reason thereof, and that he should be granted alimony. This finding by the trial court is worded as follows:

"The court further finds that, inasmuch as defendant has lived with plaintiff for a period of 15 years, and has used his efforts during said time for the benefit of the plaintiff and in the management of her property, and has not, during said time, used plaintiff's property or money to improve his own business affairs, or to improve his own individual property, that said defendant is entitled to alimony herein."

Under the laws announced, in cases growing out of the same facts, the court will look at the question: "What is the nature and extent of the pecuniary change operated by the wife's criminality?" If the union has been abandoned by the criminality of the wife without the fault of the husband, it seems just that the innocent husband should not, in addition to the grievous wrong done by the breach of the marriage vow, be wholly deprived of means to support himself and children; nor, viewing the matter from another standpoint, does it seem either just or equitable that funds which were intended at the time of the marriage for the use of both should be borne off by the guilty wife and perhaps transferred to the hands of the adulterer as the dowry of a second marriage? The interests of society point in the same direction.

After a careful study of the record and the law applicable to the facts involved, we are of the opinion, and hold, that the trial court did not err in granting the husband a reasonable amount of the wife's separate property for the support of the husband and minor children.

Plaintiff's second assignment of error asks the question:

"Did the district court of McIntosh county, Okla., having due regard for the best interests of the children in respect to their temporal, their mental and moral welfare, commit error in awarding the custody of the minor children of the plaintiff and defendant, to the defendant, George Barnett?"

The record fails to disclose any act of misconduct charged against the defendant which would render him unfit to have the care and custody of said children. On the other hand, the one now seeking the custody of the children is willing to let stand, unchallenged, a decree of the district court of McIntosh county which found her guilty of adultery. Wishing to preserve the dignity of this honorable court, we limit comment.

This court has held that in awarding the

custody of a minor child the trial court must be guided primarily by what appears to be for the best interests of the child, in respect to its temporal and its mental and moral welfare; and that in deciding what is for the best interest of the child in respect to its temporal, mental, and moral welfare, a court should well consider the influences and protection afforded by a parental affection, if such be manifest. Bruce v. Bruce, 141 Okla. 160, 285 P. 30.

The influences and protection afforded by a parental affection in the case at bar are more manifest on the part of the father than of the mother, and in the face of sufficient competent evidence to sustain the decree of the trial court awarding the custody of the children to the father, the same will not be disturbed on appeal.

The judgment of the district court of McIntosh county is affirmed in all things.

CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., and ANDREWS, J., absent.