Roberta Ann FUNNELL, Appellant,

v.

Harriett Hunt FUNNELL and James D. Funnell, Individually and as Co-executors of the Estate of Joseph W. Funnell, Deceased, Appellees.

No. 47829.

Supreme Court of Oklahoma.

May 16, 1978.

As Corrected On Denial of Rehearing Oct. 16, 1978.

**1320**

Jones, Gungoll & Van Kolken by Stephen Jones and Sylvia Van Kolken, Enid, for appellant.

Fagin, Hewett, Mathews & Fagin by Arnold D. Fagin and Warner E. Lovell, Jr., Oklahoma City, for appellees.

WILLIAMS, Justice.

Appellant, Roberta Ann Funnell, hereinafter referred to as plaintiff, filed a petition in the trial court setting out ten causes of action. Defendants were Harriet Hunt Funnell and James D. Funnell, who were sued both individually and as co-executors of the last will and testament of Joseph W. Funnell, deceased. Plaintiff is the former wife of decedent; the individual defendants are his widow and brother. After lengthy and time-consuming proceedings during which the original trial judge disqualified and plaintiff changed counsel, defendants, both individually and as co-executors, filed a demurrer upon the ground that no cause of action was stated, and various motions to make more definite and certain and motions to strike, directed to plaintiff's fourth amended petition. Treating the motions to strike as demurrers, the trial judge sustained the demurrer in toto as to the individual defendants; as to the defendants as co-executors, the demurrer was overruled as to the fifth and tenth causes of action and sustained as to all the others. When plaintiff elected to stand on her fourth amended petition without further amendment, judgment of dismissal was entered in accordance with the order sustaining the demurrers. Plaintiff then appealed to this Court.

In view of the issues raised on appeal, it will not be necessary to discuss all of the ten causes of action separately. They all depend, in one way or another, upon the provisions of a divorce decree entered on June 3, 1969, in which, upon a petition and cross petition, plaintiff and decedent each obtained a divorce from the other upon the ground of incompatability, and decedent husband was awarded the custody of the minor children of the parties. This lengthy instrument contained a rather detailed division of property and assets apparently worth about half a million dollars. Immediately following a paragraph describing the real and personal property awarded to the wife are the following two paragraphs with which we shall be principally concerned:

"IT IS FURTHER ORDERED BY THE COURT that the plaintiff, Roberta Ann Funnell, be, and she is hereby awarded *as additional property settlement* judgment against the defendant, Joseph W. Funnell, in the amount of $24,000.00, payable at the rate of $400.00 per month for five (5) years commencing August 1, 1969. IT IS FURTHER ORDERED BY THE COURT that inasmuch as this judgment is *in lieu of division of property*, said judgment will not terminate in the event of the death or remarriage of the plaintiff.

"IT IS FURTHER ORDERED BY THE COURT that the plaintiff, Roberta Ann Funnell, be, and she is hereby awarded an alimony judgment from and against the defendant, Joseph W. Funnell, in the amount of $121,000.00, payable at the rate of $1,000.00 per month,

commencing on the 15th day of July, 1969. It is further ordered by the Court that upon the death of the plaintiff, if it has not already accrued, the *payments for support mentioned in this paragraph* shall terminate; and it is further ordered by the Court that in the event of remarriage of the plaintiff, the payments for support mentioned in this paragraph shall terminate. As to the termination of this support, in the event of remarriage, the terminology of 12 O.S. 1289, adopted 1968, shall attend." (Emphasis added.)

Plaintiff's fifth cause of action, which was not dismissed, was a claim against the defendants as co-executors for unpaid amounts awarded as additional property settlement under the first paragraph above, and will not require further consideration herein.

Sometime after the divorce, decedent married the wife who survived him as his widow. He died on January 31, 1971, having made all of the monthly payments that had accrued to that date under the quoted provisions of the divorce decree. Shortly thereafter, following proper probate proceedings, defendants herein were appointed co-executors of the last will and testament of the decedent.

Plaintiff then filed a claim against the estate in which she asked for payment of all sums due under the divorce decree, specifically including all payments of alimony for support that had not yet accrued. The claim was denied by the co-executors, and plaintiff then began the action which led to the appeal now before this Court, as a suit on a rejected claim under 58 O.S.1971, Sec. 339.

The principal issues on appeal are stated by plaintiff in her petition in error as follows:

"F. The precise points of law to be urged as error are as follows:

"(1) Where a Divorce Decree sets alimony for support in a gross amount payable in installments, may the former wife press her claim for the unpaid alimony against the estate of the decedent? If so, and that claim is denied by the decedent's estate and co-executors, may the divorced surviving spouse recover as damages the amounts represented by forced sale of assets, devaluation of currency and interest on a legitimate claim which was not paid by the decedent's estate or his executors?

"(2) If the answer to the first question is yes, the Court erred in sustaining a Demurrer to the First, Second, Third, Fourth and Sixth Causes of Action.

"(3) If the answer to the second question is yes, the Court erred in sustaining the Demurrer to the Seventh, Eighth and Ninth Causes of Action.

"*If the answer to either question is no, then the Court sustaining the Demurrer was correct.*

"(4) It was error for the Court to sustain the Tenth Cause of Action with respect to sustaining a Demurrer to the defendants in their personal capacity." (Emphasis added.)

We will first consider the question contained in the first sentence of (1) above.

The question of whether an award of alimony for support survives the death of the obligor has been a troublesome one for most of the jurisdictions of this country. Since in the final analysis the answer depends upon the statutes of the particular jurisdiction and the divorce decree involved, it would serve no useful purpose, and would unduly lengthen this opinion, to collect and discuss the cases from other jurisdictions. It is said that "The rule followed by most of the courts is that a decree, granted in connection with an absolute divorce for the regular periodical payments of alimony to the wife for her maintenance and support, is terminated upon the husband's death, at least in the absence of some stipulation in the order which would require payments after his death". See 24 Am.Jur.2d Divorce and Separation, Sec. 642. For a collection of the many cases in support of this general

rule, see footnote 19, in support of the above statement of the rule, at 24 Am. Jur.2d Divorce and Separation, at page 761. See also the cases cited and discussed in 18 A.L.R. 1040, 39 A.L.R.2d 1406, and A.L.R. Later Case Service for 36–39 A.L.R.2d, at page 466.

In the briefs, the parties to this appeal agree that "Where no statute to the contrary exists and the judgment or decree is silent regarding the right to receive and the corresponding duty to pay, alimony, being personal, is generally considered as terminating on the death of the party directed to pay".

■ This is in accordance with the generally accepted common law rule that the obligation to pay alimony for support is regarded as a personal one and terminates upon the death of either the husband or wife. See *Murphy v. Shelton et al.*, Wash., 183 Wash. 180, 48 P.2d 247. In that case, after holding that under Washington statutes the court had the power to order payments of alimony for support to continue beyond the death of the husband, the court further held:

"* * * the provision for continuation of such payments after death must be either specifically stated in the decree, or else its language must be so clear and unmistakable as to indicate that the court intended that the decree should have that effect. In the absence of specific statement or clear intention, it will be presumed that the payments abate upon the death of either spouse."

In *Parsons v. Parsons' Estate*, 70 Colo. 333, 201 P. 559, the Colorado Supreme Court considered a claim against a deceased husband's estate, made by a surviving former wife under a divorce decree providing for support payments of $35.00 per month to the former wife "as long as said plaintiff shall remain single and unmarried", which had been entered pursuant to a written agreement of the parties. In denying the former wife's claim for payments which had

accrued after the death of her former husband, the court said:

"The contract upon which the claimant relies in the instant case does not disclose any intention that it should survive the death of the husband. There being an absence of any agreement of the parties to that effect, and the decree not showing that the court intended to bind the husband's heirs after his deceased, the alimony does not survive the former husband's death."

Much of the difficulty in answering the question of whether an award of alimony for support survives the death of the obligor arises from the varying contexts in which the terms "alimony" and "alimony in gross" are used in the statutes and the reported decisions.

In Black's Law Dictionary, Revised Fourth Edition, at page 97, it is said that the word "alimony" comes from the Latin "alimonia", meaning sustenance, and means, therefore, the sustenance or support of the wife by her divorced husband and stems from the common law right of the wife to support by her husband. It is also said that "alimony in gross", or in a lump sum, is in the nature of a final property settlement, and hence in some jurisdictions is not included in the term "alimony". In 1913, in *Poloke v. Poloke*, 37 Okl. 70, 130 P. 535, this Court defined alimony as "an allowance which the husband pays, by order of the court, to his wife for her maintenance while living separate from him, where no suit is brought for divorce, or during the pendency of a divorce suit or after the divorce is granted".

Nevertheless, over the years the distinction between awards for property division and awards for support in divorce decrees became less clear. For instance, see *Barnett v. Barnett*, 158 Okl. 270, 13 P.2d 104, in which, in 1932, this Court sustained an award of alimony to the *husband* under the last sentence of the statute codified as 12 O.S.1971, Sec. 1278 (before its 1975 amendment). That sentence provides that "In

case of a finding by the court, that such divorce should be granted on account of the fault or aggression of the wife, the court may set apart to the husband and for the support of the children, issue of the marriage, such portion of the wife's separate estate as may be proper". Of course that sentence does not specifically mention support for the divorced husband, and does not use the word "alimony". The trial court's finding, upon which the award of *alimony* in the amount of $15,000 was based, and which this Court affirmed, was as follows:

" * * * The court further finds that inasmuch as defendant has lived with plaintiff for a period of fifteen years, and has used his efforts during said time for the benefit of plaintiff and in the management of her property, and has not, during said time, used the plaintiff's property or money to improve his own business affairs, or to improve his own individual property, that said defendant is entitled to alimony."

Similarly, in *Dobry v. Dobry*, 203 Okl. 327, 220 P.2d 698, this Court in 1950 considered an appeal in a divorce case in which the property of the husband consisted only of stock, acquired before the marriage, in Dobry Flour Mills, Inc., which was worth $30,000.00. The wife was awarded a divorce and alimony in the amount of $10,-800.00, payable at the rate of $300.00 per month. No property, as such, was awarded to her. In her brief in the case now before us, the plaintiff (appellant) cites the following language of this Court from *Dobry* in support of her argument that an award of alimony for support survives the death of the obligor:

"The basic idea of alimony is that it is an allowance for the support of the wife. In some jurisdictions it may take the form of stated payments and may be terminated upon change of conditions, but in this state the award must be for a sum in gross and notwithstanding provisions for the payment of the gross sum in installments, the wife has an absolute

property right in the gross sums allowed, enforceable against the property of the husband or future earnings or accumulations of the husband or *estate of the husband*." (Emphasis added.)

The wife argues in effect that by "estate of the husband", this Court meant "estate of the husband *after his death*". It may be doubted that such was the meaning intended, since both parties in that case were alive and no question as to the liability of the estate of a deceased husband was presented. However, even if the wife in this case has properly construed the quoted language from *Dobry*, no assistance to her argument is afforded because in the second sentence following the quoted language, this Court said at 220 P.2d 701:

" * * * Under the circumstances the award in its nature is *a division of the defendant's property* arising from the plaintiff's former relation and the defendant's aggression." (Emphasis added.)

Since this Court considered the award in *Dobry*, though denominated "alimony", to be a property division, a statement that it would be enforceable against the estate of a deceased husband would be in accordance with well settled law on that point. It would not be in point in the situation presented in the case now before us, in which the alimony concerned is plainly for support only, and is entirely separate and apart from the property division and money awarded "in lieu of division of property", in the divorce decree here concerned.

In 1967, possibly because of the uncertain meaning which the term "alimony" had by usage acquired, our Legislature enacted the statute which, as amended in 1968, is now codified as 12 O.S.1971, Sec. 1289(b), and which is applicable in this case. In pertinent part, it provides that in divorce decrees entered after December 31, 1967, providing for periodic alimony payments, the court may distinguish between alimony as "payment for support" and alimony "pertaining to a division of property". It further provides:

**1324**

" * * * Upon the death of the recipient, the payments for support, if not already accrued, shall terminate, but the payments pertaining to a division of property shall continue until completed; and the decree shall so specify. The payments pertaining to a division of property shall be irrevocable. Upon the presentation of proper proof of the death of such recipient, the court shall order the judgment for support to be terminated * *. The court shall also provide in the divorce decree that any such support payments shall terminate after the remarriage of the recipient, unless the recipient can make a proper showing that said support is still needed and that circumstances have not rendered payment of the same inequitable * * * ".

This section provides that the payments for support shall terminate upon the death of the recipient, or upon her remarriage (with the exceptions noted). It does not, as plaintiff argues, provide that support payments shall terminate *only* upon such eventualities. It does not deal with the effect of the death of the obligor upon an award of alimony for support, and does not purport to change the common law rule that the duty to pay alimony for support, being personal, terminates on the death of the husband. Neither in the quoted section of the statute nor in the divorce decree here concerned do we find language indicating, in the language of the Colorado court in *Parsons*, supra, an intent "to bind the husband's heirs after his decease".

■ We therefore hold that under our statute as it presently reads, an award of alimony for support does not survive the death of the obligor, and cannot be enforced as against the co-executors of his estate, in the absence of an enforceable contract therefor. We cannot believe that it was the intention of our Legislature, in enacting Sec. 1289(b), to place a divorced wife in a status that could easily negate the favored position rightfully accorded to a deceased husband's widow and children under our

statutes of descent and distribution, unless she establishes herself as a lawful creditor of the decedent asserting property or contract rights.

Despite the concession of plaintiff in her petition in error that "If the answer to either question is no, then the Court order sustaining the Demurrer was correct", the defendants, in their brief in this Court, have affirmatively agreed that the fourth cause of action (for the recovery of certain sums representing debts paid by plaintiff and which, under the divorce decree, the defendant husband was allegedly ordered to pay) stated a cause of action against the defendants as co-executors. Because of this confession of error, the judgment of dismissal must be reversed as to the fourth cause of action, as against the defendants as co-executors.

The same is true as to the sixth cause of action (for the recovery of one half of the amount of a federal income tax refund check held by defendants, and made out to plaintiff and her former husband). In a later brief, defendants "go on record as recognizing appellant's right to one-half of the income tax refund check which she seeks pursuant to said Sixth Cause of Action".

We shall treat the rather confusing language contained in paragraph F(4) of plaintiff's petition in error as an allegation that the court erred in sustaining, as to the defendants as individuals, the demurrer to the tenth cause of action.

■ Liberally construed, the tenth cause of action was, in essence, a claim for damages for fraud. That being true, it was not necessary to present this claim as a claim against the estate in the probate case. In this cause of action, plaintiff alleged, among other things, that just prior to his death, the former husband had transferred real and personal property for the purpose of rendering his estate insolvent and defrauding creditors thereof; that the defendants, his widow and brother, knew of

such fraudulent transfers, and that they participated in same and received the benefits of same. She also alleged that the defendants, with an intent to defraud creditors, concealed and failed to list all of the assets of the estate in the inventory filed in the probate case. She asked for judgment against the defendants, as individuals and as co-executors, in the total amount sought under the first nine causes of action, and for judgment against the defendants as individuals for punitive damages in the total amount of $100,000.00.

We hold that the tenth cause of action properly stated a cause of action against the defendants as individuals. Also, the journal entry shows that the trial court, as against the defendants as individuals, sustained the "demurrers (and Motions to Strike treated as demurrers)". Defendants' motion to make more definite and certain, as to the tenth cause of action, apparently has not been acted upon.

In summary: the judgment dismissing the fourth and sixth causes of action against the defendants as co-executors is reversed; the judgment dismissing the tenth cause of action against the defendants as individuals is reversed; in all other respects the judgment of dismissal is affirmed; and the cause is remanded to the trial court for such further proceedings as may be required.

LAVENDER, V. C. J., and DAVISON, IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.