JACK R. YOAKUM, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2045–80.     Filed January 23, 1984.

Jack R. Yoakum, pro se.
*Patrick E. McGinnis,* for the respondent.

PARKER, *Judge*: Respondent determined a deficiency of $978.23 in petitioner's Federal income tax for taxable year 1977. The issue for our decision is whether petitioner is entitled to a deduction under section 215[1] for certain payments made to his former wife pursuant to a divorce decree.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner Jack R. Yoakum was a resident of Locust Grove, Okla., at the time he filed the petition in this case. He timely filed a U.S. Individual Income Tax Return (Form 1040) for taxable year 1977.

Petitioner was married to Glenda R. Yoakum on March 25, 1958, in Tulsa, Okla. The marriage lasted over 18 years, during which time two children were born and various properties were acquired.

On January 6, 1977, Jack R. Yoakum, as plaintiff, filed a petition with the local District Court of Mayes County, Okla., requesting a decree of absolute divorce from Glenda R. Yoakum on the ground of incompatibility. Petitioner further requested that he be granted custody of the couple's two minor children and that the properties of the parties be equitably divided by the court.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year at issue.

On January 11, 1977, Glenda R. Yoakum filed a general appearance with the District Court of Mayes County, Okla., acknowledging the receipt of a copy of the divorce petition. Glenda R. Yoakum further consented that in the absence of a pleading filed on her behalf within 20 days, the petition could be heard and determined without further notice to her. No such pleadings were filed by or on behalf of Glenda R. Yoakum within that time. The District Court, on February 7, 1977, awarded a decree of absolute divorcement to petitioner on the ground of incompatibility.

After granting petitioner the divorce and custody of the two minor children, subject to reasonable visitation rights on Glenda R. Yoakum's part, the divorce decree went on to provide, in part, that:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, Glenda R. Yoakum, receive, and she is hereby awarded as her full and equitable share of the properties belonging to the parties the 1975 Chrysler Newport automobile now in her possession together with such unexpired insurance as remains thereon, the same tagged for 1977, at the expense of Jack R. Yoakum, plaintiff, and that she be paid by the plaintiff the sum of $2,000 in cash within five days after the entry of the Divorce Decree herein.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that by way of alimony, and in lieu of any other settlement, the defendant be, and she is hereby, awarded the sum of $3,000, payable at the rate of $250 per month, the first installment to be paid by the plaintiff within 30 days after the entry of the Divorce Decree herein, and that upon full payment thereof, said defendant shall execute in favor of the plaintiff a release thereof, the final installment not to be paid until the execution and delivery of such release to be obtained and provided by the plaintiff.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties have equitably divided the household goods located in the residence of plaintiff and the minor children together with an additional list, in writing, of household goods therein located which shall be made available to the defendant at anytime within one year from the entry of this Divorce Decree.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each of the parties be awarded their personal clothing and effects and that the plaintiff be, and he is hereby, awarded all the property, both real and personal, belonging to the parties not herein specified or contained in the written list signed by both the parties of the household goods and that the defendant be, and she is hereby, directed to execute to the plaintiff a quit claim deed thereon within ten days from the date hereof, in default of which, the recording of a certified copy hereof shall constitute such transfer, said real property being situate in Mayes County, Oklahoma, and described as follows, to-wit:

The Northeast Quarter of the Southeast Quarter of the Northwest Quarter LESS AND EXCEPT the North 210 Feet of the East

330 Feet thereof, and, the East 315 Feet of the Northwest Quarter of the Southeast Quarter of the Northwest Quarter, all in Section Thirty-Five (35), Township Twenty (20) North and Range Twenty (20) East of the Indian Base and Meridian according to the United States Government Survey and Plat thereof, * * *

Under the divorce decree, petitioner received fee simple title to that real property.

Glenda R. Yoakum was not represented by an attorney in the divorce proceeding brought by her husband, nor did she appear at the hearing on February 7, 1977, at which time the divorce decree was entered. Subsequent to the entry of the divorce decree, Glenda R. Yoakum did obtain legal counsel, and on September 26, 1977, filed an application to vacate divorce decree and for entry of a new divorce decree. After first alleging that Glenda R. Yoakum was legally incompetent due to mental illness at the time the original divorce decree was entered, the application for entry of a new divorce decree further alleged, in part, that:

The provisions of said Divorce Decree with regard to division of property and allowance of alimony are disproportionate to the total value of the jointly acquired property; and, is disproportionate to the needs of Defendant for support and the ability of the Plaintiff to provide for support.

* * * * * * *

WHEREFORE, premises considered, Defendant prays that the Court vacate, set aside and hold for naught, the Divorce Decree heretofore entered on February 7, 1977, and that a new Divorce Decree be entered, making appropriate provision for the division of property and payment of alimony.

In his response to the petition to vacate the original divorce decree, petitioner denied that Glenda R. Yoakum had been legally incompetent due to mental illness at the time the original divorce decree was entered. Petitioner further denied Glenda R. Yoakum's allegations concerning the division of property and allowance of alimony, stating that:

[2] Plaintiff specifically denies that the division of property and allowance of alimony was not commensurate with the contribution made by the Defendant to the family wealth and particularly alleges that the provisions contained in the Divorce for settlement of property rights, alimony and in lieu of any other settlement were fully adequate under the conditions and circumstances of the parties.

The District Court of Mayes County, in an order dated October 14, 1977, confirmed the original divorce decree in all respects, except with respect to the total amount to be paid by petitioner to Glenda R. Yoakum as alimony. The relevant provisions of the October 14, 1977, order are as follows:

And now on this 14th day of October, 1977, the same being a regular juridical day of the above styled Court, the above entitled and numbered cause comes on for hearing in its regular order before the undersigned Judge of the District Court with the plaintiff appearing by Ernest R. Brown, his Attorney and with the Defendant appearing by Floyd L. Walker, her Attorney, whereupon statements are made to the Court with respect to the validity of the Decree of Divorce entered on 7 February, 1977, the subsequent actions of the parties and that the parties have settled their differences with respect to additional alimony, from which the Court finds that the provisions of the Divorce Decree entered on 7 February, 1977 should be confirmed except with respect to an additional payment in the total sum of $1,800.00 as alimony to the Defendant, the Court further finding that Plaintiff has complied with the settlement provided in the former Decree in all respects to date and has made all the payments required of him, and being fully advised in the premises.

\*       \*       \*       \*       \*       \*       \*

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the provisions with respect to alimony to be paid by the Plaintiff to Defendant be, and the same is hereby modified in the following manner: the Defendant is hereby awarded in the nature of alimony and in lieu of any other settlement and the Plaintiff is hereby required to pay unto her, the total sum of $4,800.00 payable at the rate of $250.00 per month commencing on the 7th day of March, 1977 and thereafter until the 7th day of February, 1978; said Plaintiff is further required to pay to the Defendant the sum of $150.00 per month commencing the 7th day of March, 1978, with the final payment thereof on the 7th day of February, 1979. Upon full payment thereof, the Defendant shall execute unto the Plaintiff a release of all claims by virtue hereof and the final installment (otherwise due on 7 February, 1979) not to be paid until the execution and delivery of said release.

Petitioner did subsequently make all the payments required of him, and Glenda R. Yoakum filed a "Receipt and Release of Judgment" with the District Court of Mayes County on January 29, 1979, to acknowledge the receipt of all payments from petitioner.

The real property to which petitioner acquired fee simple title under the divorce decree consisted of approximately 55 acres of pasture land purchased by petitioner and Glenda R. Yoakum in 1975 for about $20,000. They built a new house on

a portion of the land and moved into it in July of 1976. Petitioner and Glenda R. Yoakum had borrowed money to purchase the land and to build the house.[2]

At the time the original divorce decree was filed, petitioner was vice president of the Bank of Locust Grove, and had been employed by the Bank of Locust Grove for a period of 4 years. His salary as vice president was about $20,000 a year.

Petitioner also owned 200 or 300 shares of the capital stock of the Bank of Locust Grove, representing about 2 percent of the outstanding shares of such stock. There is no evidence in the record as to the date on which petitioner acquired such stock or the value of that stock.

Petitioner also retained custody of the joint bank accounts after the divorce, but such accounts were exhausted by payment of the $2,000 lump-sum figure within 5 days of the divorce decree, so any balance remaining was not substantial.

At no time prior to or during the divorce proceeding did petitioner and Glenda R. Yoakum discuss the tax consequences of the monetary payments required by the divorce decree. Similarly, the spouses did not discuss and no agreement was reached between them as to whether the payments would terminate if Glenda R. Yoakum died or remarried.

On his 1977 tax return, petitioner claimed a deduction of $2,850 for alimony paid. In his statutory notice of deficiency, respondent determined that the $2,850 paid by petitioner to his former wife, Glenda R. Yoakum, did not constitute alimony payments for support and was therefore not deductible by petitioner.

---

[2]Petitioner suggested that he and his wife had borrowed money to buy the land and borrowed 100 percent of the money to build the new house and that both were 100-percent mortgaged. However, the Court is not persuaded by his efforts to minimize the value of the real property he received under the divorce decree. Petitioner argued that the $2,000 lump-sum payment and the automobile received by the wife represented an equitable division of their properties. However, the Court is satisfied that 55 acres of land and a new house, even though heavily mortgaged, have substantial value in excess of the $2,000 lump-sum payment and the used car the wife received. Petitioner did not submit any documentation in regard to the value of the real property. While petitioner argues as to the intent of the spouses saying that the other payments, totaling $4,800, were intended as support payments, he furnished the Court no evidence other than his own self-serving, uncorroborated testimony. We note that the divorce decree refers to an "executed stipulation for settlement of custody, support, property and alimony rights" having been filed by the parties on the same date on which Glenda R. Yoakum filed her general appearance in the proceeding. However, that document was not made part of the record presented to this Court.

OPINION

Section 215[3] allows the husband to deduct payments made to the wife if those payments are includable in her gross income under section 71. Section 71(a)[4] provides that the wife must include in her gross income "periodic" payments "in discharge of * * * a legal obligation which, because of the marital or family relationship" is imposed on or incurred by the husband under a divorce decree. Section 71(a) applies only to payments made in recognition of the general obligation to support which is made specific by the decree. Sec. 1.71–1(b)(4), Income Tax Regs. Payments which are part of a property settlement are capital in nature and, therefore, are not subject to the provisions of section 71. *Thompson v. Commissioner*, 50 T.C. 522 (1968); *Price v. Commissioner*, 49 T.C. 676 (1968). Here the payments were clearly imposed by the divorce decree, so the question is whether the payments were "periodic" and in the nature of alimony or an allowance for support rather than in the nature of a property settlement.

Section 71(c)(1) provides, in pertinent part, that "installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree * * * shall not be treated as periodic payments." Where the payments are to be paid over a period ending 10 years or less from the date of the divorce decree, as in this case, section 1.71–1(d)(3)(i) and (ii), Income Tax Regs., provides a specific exception to the restrictions of section 71(c)(1) and permits payments that might otherwise be considered "installment payments" to be considered instead as "periodic payments." That exception applies where (1) the payments are subject to one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic

---

[3]Sec. 215(a) provides, in pertinent part, that:

In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

[4]Sec. 71(a), provides, in pertinent part, that:

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce * * * , the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree * * *

status of either spouse, and (2) are in the nature of alimony or an allowance for support.[5]

Petitioner contends that the payments to his former wife satisfy all of these requirements, are includable in the gross income of his wife,[6] and are therefore deductible by him under section 215. Petitioner contends that the payments in question were for support and were not in the nature of a property settlement. This contention seems to be based on the fact that the decree referred to the payments as "alimony," a term which petitioner apparently equates with support. Petitioner also contends the payments are periodic, asserting that such payments, under Oklahoma law, would have terminated upon his former wife's death, and are therefore subject to one of the contingencies specified in section 1.71–1(d)(3)(i) and (ii), Income Tax Regs. In addition, petitioner also contends such payments are subject to a contingency in the form of the Oklahoma trial court's power to alter, modify, or amend such payments.

Respondent contends that the payments in question here are neither "periodic" nor for support. Respondent contends that the payments are installment payments discharging a principal sum specified in the decree, and are therefore not considered periodic under the terms of section 71(c)(1). Further, respondent contends that the exception provided by section 1.71–1(d)(3)(i) and (ii), Income Tax Regs., is inapplicable here.

---

[5]Sec. 1.71–1(d)(3)(i) and (ii), Income Tax Regs., provides that:

(3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions:

(a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and

(b) Such payments are in the nature of alimony or an allowance for support.

(ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71(a) regardless of whether—

(a) The contingencies described in subdivision (i)(a) are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, or

(b) The aggregate amount of the payments to be made in the absence of the occurrence of the contingencies described in subdivision (i)(a) of this subparagraph is explicitly stated in the decree, instrument, or agreement or may be calculated from the face of the decree, instrument, or agreement, or

(c) The total amount which will be paid may be calculated actuarially.

[6]The record shows that his wife initially reported the payments on her 1977 Federal income tax return but then filed a claim for refund of the taxes so paid, and she did not report the payments on her 1978 return.

Respondent argues that since the original divorce decree did not specify the payments as being for support, nor provide they were to terminate upon the death or remarriage of the recipient, under Oklahoma law, such payments were therefore neither subject to contingencies so as to be periodic nor in the nature of support. We agree with respondent.

For the payments in question to be considered periodic, section 1.71–1(d)(3)(i) and (ii), Income Tax Regs., requires that such payments be for support and be subject to certain designated contingencies: death of either spouse, remarriage of the wife, or change in the economic status of either spouse. Here the divorce decree was silent as to whether the payments were for support and as to any such contingencies. However, section 1.71–1(d)(3)(ii)(a), Income Tax Regs., provides such contingencies may be imposed by the divorce decree or imposed by local law.

Under Oklahoma law, the term "alimony" refers to both support payments and to a division of property. See *Funnell v. Funnell,* 584 P.2d 1319 (Okla. 1978); *Huchteman v. Huchteman,* 557 P.2d 427 (Okla. 1976); *Cox v. Cox,* 543 F.2d 1277 (10th Cir. 1976). Thus, the Oklahoma trial court's use of the word "alimony" in this case is not instructive, particularly since the divorce decree is silent as to whether the payments were for support or a division of property.

The pertinent Oklahoma statutory provision in effect for the year in issue (Okla. Stat. tit. 12, sec. 1289(B) (1971)), provided as follows:

In any divorce decree entered after December 31, 1967, which provides for periodic alimony payments, the court, at the time of entering the original decree, only, may designate all or a portion of each such payment as support, and all or a portion of such payment as a payment pertaining to a division of property. Upon the death of the recipient, the payments for support, if not already accrued, shall terminate, but the payments pertaining to a division of property shall continue until completed; and the decree shall so specify. The payments pertaining to a division of property shall be irrevocable. Upon the presentation of proper proof of death of such recipient, the court shall order the judgment for support to be terminated, and the lien thereof released unless a proper claim shall be made for any past due support payments by any executor, administrator or heir within ninety (90) days from the date of death of the recipient. The court shall also provide in the divorce decree that any such support payments shall terminate after remarriage of the recipient, unless the recipient can make a proper showing that said support is still needed and that circumstances have not rendered

payment of the same inequitable; provided, however, that unless the recipient shall commence an action for such determination within ninety (90) days of the date of such remarriage, the court shall, upon proper application, order the support judgment terminated and the lien thereof discharged.

Under this statutory provision, as construed by the Oklahoma Supreme Court, the trial court can designate a portion of the payment as support *only* at the time of entering the original divorce decree and cannot later modify, alter, or amend the divorce decree to so provide. *Shea v. Shea*, 537 P.2d 417, 419 (Okla. 1975). The Oklahoma Supreme Court further held in that case that if the trial court in the original divorce decree fails to designate the payments as being for support or expressly provide that the payments terminate upon death or remarriage of the recipient, then such payments do not terminate and continue until the entire amount awarded is paid regardless of the death or remarriage of the recipient.[7]

Petitioner nonetheless contends that the payments were subject to contingencies in that the trial court had power to modify, alter, or amend the divorce decree, and in fact exercised such power in the order dated October 14, 1977. However, we think that in order for the possibility of judicial modification to be a contingency within the meaning of section 1.71–1(d)(3)(i) and (ii), Income Tax Regs., the basis for such modification must be grounded upon one of the contingencies designated in the regulation. Thus, if the decree, instrument, or agreement is not subject to modification by reason of the death of either spouse, remarriage of the wife, or change in the economic status of either spouse, the fact that the decree, instrument, or agreement may be modified on other grounds is not sufficient to subject such payments to contingencies within the meaning of section 1.71–1(d)(3)(i) and (ii), Income Tax Regs. *Kent v. Commissioner*, 61 T.C. 133, 138 (1973); Rev. Rul. 59–190, 1959–1 C.B. 23.

---

[7]Under Oklahoma law, there is authority for the proposition that the failure of the Oklahoma trial court to designate the payments as for support or to provide for their termination upon the death or remarriage of the recipient mandates a finding that such payments are not for support but constitute, instead, a division of property. *Gird v. Gird*, 45 O.B.A.J. 2088 (Okla. Ct. App. 1974). Cf. *Shea v. Shea*, 537 P.2d 417 (Okla. 1975). The Tenth Circuit Court of Appeals, to which, absent a stipulation to the contrary, any appeal in this case would lie, has cited *Gird* as authority for the rule that, under Oklahoma law, alimony payments that do not terminate upon death or remarriage are statutorily treated as a division of property. See *Cox v. Cox*, 543 F.2d 1277 (10th Cir. 1976).

Under Oklahoma law, a judgment in a divorce proceeding may only be modified, set aside, or vacated under one of the provisions enumerated in the applicable Oklahoma statutory provisions,[8] unless it is held to be a void judgment. *Rice v. Rice*, 603 P.2d 1125 (Okla. 1979); *Fisher v. Fisher*, 558 P.2d 391 (Okla. 1976); *Amar v. Amar*, 589 P.2d 237 (Okla. Ct. App. 1979). Petitioner has not advanced, nor do we see, any reason why this divorce decree should be considered void. None of the provisions of the Oklahoma statute authorize the District Court to modify, alter, or amend the divorce decree by reason of the death of either spouse, remarriage of the wife, or change in the economic status of either spouse. We have previously held that Oklahoma law does not allow modifications of the original divorce decree, once it has become final, based on the contingencies of death, remarriage, or change in economic status. *Adams v. Commissioner*, 66 T.C. 830, 832 (1976). Petitioner has not advanced, nor have we found, any that would convince us to now hold otherwise. We think our *Adams* holding is consistent with and indeed mandated by the Oklahoma Supreme Court's holding in *Shea v. Shea, supra.*

Petitioner attempts to utilize language in the application to vacate the original divorce decree to bolster his argument that the payments in question were for support and could be and were modified by the trial court. That application did allege that the provisions of the original divorce decree were disproportionate to the needs of his ex-wife for support and the

---

[8] Okla. Stat. tit. 12, sec. 1031 (1971) provides that:

The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made:

First. By granting a new trial for the cause, within the time and in the manner prescribed in Section 5035.

Second. By a new trial granted in proceedings against defendants constructively summoned, as provided in Section 4728.

Third. For mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order.

Fourth. For fraud, practiced by the successful party, in obtaining the judgment or order.

Fifth. For erroneous proceedings against an infant, or a person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings.

Sixth. For the death of one of the parties before judgment in the action.

Seventh. For unavoidable casualty or misfortune, preventing the party from prosecuting or defending.

Eighth. For errors in a judgment, shown by an infant in twelve months after arriving at full age, as prescribed in Section 5142.

Ninth. For taking judgments upon warrants of attorney for more than was due to the plaintiff, when the defendant was not summoned or otherwise legally notified of the time and place of taking such judgment.

ability of the plaintiff (petitioner herein) to provide for support. However, in the modified divorce decree, the Oklahoma District Court used the same language to describe the monetary payments as appeared in the original divorce decree. That language indicates to us only the form in which the payments were to occur—monthly installment payments—and not their character as support. Furthermore, the modified divorce decree also lacks any language designating the payments in question as support or providing for their termination upon death or remarriage of the recipient. Indeed, under Oklahoma law, as discussed above, the modified decree could not insert such provisions since Oklahoma Statutes title 12, section 1289(b) (1971) grants the District Court authority to insert such provisions *only* at the time the original decree is entered. See *Shea v. Shea*, 537 P.2d at 419. Thus, the fact that the application to vacate the original divorce decree might perhaps be read as characterizing such payments as support, and might perhaps be read as suggesting a contingency based on change in economic status, adds no weight to petitioner's argument.

Although the Oklahoma trial courts may possess authority to modify, alter, or amend their divorce decrees upon certain grounds, such possibility of modification, since not based on the grounds enumerated in section 1.71–1(d)(3)(i) and (ii), Income Tax Regs., does not constitute a contingency imposed by local law within the meaning of such regulation. We thus conclude that the payments in this case are not "periodic payments" as required by section 71(a).

Whether as an element required by the exception in the regulation to the installment payments provision of section 71(c)(1) or as an independent requirement of section 71(a), petitioner has the burden of proving that the payments in question were in the nature of support rather than a property settlement. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner has failed to do so, and we conclude that the payments in question were not in the nature of support, but were in the nature of a division of property between petitioner and his ex-wife.

Petitioner's argument that such payments were in the nature of support centers around their designation in the

divorce decree as "alimony," a term which petitioner equates with support. However, we have repeatedly stated that in determining whether payments are in the nature of support or part of a property settlement, labels assigned to the payments by the parties in their agreement or by the court in the divorce decree are not conclusive. Rather, the determination rests upon all of the surrounding facts and circumstances. See *Gammill v. Commissioner*, 73 T.C. 921, 926–927 (1980), affd. 710 F.2d 607 (10th Cir. 1982), and cases cited therein. And as we noted earlier, the Oklahoma Supreme Court, as well as the Tenth Circuit Court of Appeals, has recognized that the term "alimony," under Oklahoma law, has been used at times to refer to both support payments and payments pertaining to a division of property. Thus, petitioner's reliance on the term "alimony" as indicating the payments were for support is misguided.

The language of the divorce decree, itself, also supports our conclusion that the payments herein were not for support. The original divorce decree provided that "by way of alimony, and in lieu of any other settlement," petitioner was to pay a fixed sum to his ex-wife. This language indicates merely the *form* in which the property settlement was to be accomplished— monthly cash payments instead of an in-kind division—and not the character of those payments as support.

While we think Oklahoma law supports our view, we do not base our decision upon how such payments would be classified under Oklahoma law. See note 7. There are other factors present which the courts have relied upon to support a finding that the payments pertained to a division of property rather than support. In *Riley v. Commissioner*, 649 F.2d 768, 772 (10th Cir 1981), affg. T.C. Memo. 1979–237, the court quoted from T.C. Memo. 1979–237 which listed the following objective factors as being indicative of property settlement payments: (1) The presence of a fixed sum, (2) the fact that the payments are not related to the husband's income, (3) the continuation of the payments without regard to the remarriage or death of the wife, (4) the fact that the wife relinquished property interests in return for the payments, and (5) the fact that the husband's obligation to make the payments is secured.

The amount of the payments here constituted a fixed sum. We do not believe the subsequent modification of the divorce

decree to increase the total amount from $3,000 to $4,800 changes this result. The ultimate liability remained a fixed sum, albeit slightly increased.

The payments in question were not related to the husband's income. Rather, the divorce decree specified a certain amount of the principal obligation that was to be paid each month. The decree is completely silent as to what effect, if any, a change in the petitioner's income would have on the amount of the monthly installments.

The payments in question would have continued despite the death or remarriage of petitioner's wife. The decree is completely devoid of any language which would allow termination of the payments upon death or remarriage pursuant to Oklahoma Statutes title 12, section 1289(b) (1971). That statute provides that payments pertaining to a division of property, as we have concluded the payments in question here were, shall be irrevocable.[9]

We think the record justifies a finding that the petitioner's former wife relinquished property interests in return for the payments. The relevant Oklahoma statute, Oklahoma Statutes title 12, section 1278 (1971), provides, in pertinent part, that:

As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties as may appear just and reasonable, by a division of property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof.

In *Gammill v. Commissioner*, 73 T.C. at 929, we noted that:

the Supreme Court of Oklahoma has stated that the nature of a wife's interest in jointly acquired property, property acquired by the joint effort of the spouses during marriage, "is similar in conception to community property of community property states, and is regarded as held by a species of common ownership." *Collins v. Oklahoma Tax Commission*, 446 P.2d 290, 295 (Okla. 1968). Upon divorce, the wife's interest in jointly acquired

---

[9]Petitioner contends that it is a foregone conclusion that had his former wife died prior to completion of all the payments, the payments would have stopped for lack of someone to pay them to. We do not agree with this conclusion, and suggest that in such a situation, the former wife's estate could continue to collect the installments.

property is vested, regardless of who holds title. *Davis v. Davis*, 61 Okla. 1275, 161 P. 190, 193 (1916).

In affirming our holding in *Gammill* on this point, the Court of Appeals for the Tenth Circuit stated that "Even though Oklahoma is not a community property state, it does recognize the equity of the wife in property which has accumulated during the continuance of the marriage and allows appropriate division to be made. The wife's interest in jointly acquired property vests on the pendency of the divorce. *Sanditen v. Sanditen*, 496 P. 2d 365 (Okl. 1972)." *Gammill v. Commissioner*, 710 F.2d 607, 610 (10th Cir. 1982).

In light of the foregoing, we feel it is proper to view this transaction as one in which petitioner's ex-wife relinquished her right to an "equitable division" of some of the property in-kind in return for the monthly installment payments in cash. Petitioner testified that he and his former wife acquired various properties during their marriage, most notably 55 acres of land, a recently constructed home, and 200 to 300 shares of bank stock. As noted in our findings of fact, we do not accept petitioner's suggestion that the $2,000 lump-sum payment and the used automobile received by the wife constituted an equitable division of this property. In short, in lieu of an undivided interest in some of the jointly acquired properties, petitioner received fee simple title to the real property and the stocks, and his former spouse received her equitable share by way of monthly cash payments totaling $4,800. These facts justify the conclusion that petitioner's former wife relinquished property interests in return for the payments.

The final factor listed by the court in the *Riley* case is whether the husband's obligation to make the payments is secured. Based on the record herein, we cannot determine whether or not petitioner's obligation was secured. However, we note that the wife was required to give a receipt and a release upon the final payment, which may suggest that there was security involved. In any event, the presence of security is merely one factor indicative of a property settlement, and not a prerequisite. Therefore, assuming there was no security, the absence of a secured obligation does not negate the other factors present herein, all of which support a finding that the payments at issue constituted a property settlement rather than support payments.

In conclusion, since the payments here were not for support and were not periodic, but rather were installment payments discharging a principal sum specified in the divorce decree, such payments were not includable in the recipient's income under section 71. Therefore, petitioner was not entitled to deduct such payments from his income under section 215.

To reflect the foregoing,

*Decision will be entered for the respondent.*