CLARENCE HOOVER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hoover v. Commissioner
Docket No. 38987-85.
United States Tax Court
T.C. Memo 1987-49; 1987 Tax Ct. Memo LEXIS 49; 52 T.C.M. (CCH) 1496; T.C.M. (RIA) 87049; January 21, 1987. Barry N. Shinberg, for the petitioner. Alan G. Merkin, for the respondent. POWELL
MEMORANDUM FINDINGS OF FACT AND OPINION POWELL, Special Trial Judge:[1] Respondent determined a deficiency in petitioner's 1982 Federal income tax liability in the amount of $5,450. Petitioner filed a timely petition on October 21, 1985. At the time that the petition was filed, petitioner was a resident of New Jersey. The issue before the Court is whether petitioner is entitled to a deduction under section 215 [2] for payments made during 1982 to his former wife, Margaret. [3]
*51 The case was submitted on a stipulated record. The facts are as follows: On May 14, 1980, petitioner and Margaret executed a "Separation, Support, Property Settlement and Custody Agreement." The agreement provided, inter alia: HUSBAND shall pay to WIFE as alimony, support and maintenance, the sum of One Hundred Twenty-five Thousand ($125,000.00) Dollars, payable, together with interest at the rate of six (6%) per-cent per annum on the unpaid balance, as follows: a) The sum of Five Thousand ($5,000.00) Dollars, plus interest as aforesaid, beginning April 1, 1980, and on the first day of each month thereafter until December 1, 1980. b) Thereafter the sum of Eight Hundred Eighty-eight and 17/100 ($888.17) Dollars per month, including interest as aforesaid, on the first day of January, 1981, and continuing monthly thereafter until the 1st day of February, 1992, at which time the remaining balance of principal and interest shall become due and payable. c) HUSBAND'S liability for any balance then remaining unpaid shall cease absolutely upon the death of WIFE. Margaret agreed to transfer to petitioner her interests in real estate in New Jersey and Pennsylvania and in certain *52 common stocks that were jointly owned. Petitioner, however, was required to -- * * * simultaneously, with the execution of this agreement, execute and deliver to WIFE, in proper form, a bond as evidence of the balance due on the cash settlement hereinafter provided, said bond to be secured by a first mortgage on the New Jersey premises previously mentioned, and by a second mortgage on the Pennsylvania property, subject only to the existing first mortgage which HUSBAND shall assume and agree to pay as part of this Agreement. Said mortgages shall contain provision for release therefrom, or satisfaction thereof, upon the transfer of title to the premises secured thereby by HUSBAND to a bone [sic] fide purchaser for value, provided HUSBAND places in escrow as additional collateral (interest to accrue to HUSBAND), an amount from the proceeds equal to not less than one-half of the then existing principal balance of the bond and mortgage. The mortgages and/or notes, for our purposes here, contained virtually identical provisions in three respects. The excerpts below are representative of these provisions: WITNESSETH, that to secure payment in lawful money of the United States of *53 America, of the principal and interest of the promissory note made and given by the Mortgagor to the Mortgagee, of the tenor and purport as follows: the sum of EIGHTY THOUSAND AND NO/100 DOLLARS ($80,000.00) with interest at the rate of six (6%) per cent per year from 1980, said principal and interest to be paid as follows: $888.17 on the 1st day of January, 1981, and a like sum on the 1st day of each and every month thereafter, until the 1st day of February, 1992, when the balance of the unpaid principal and interest shall be due and payable. * * * Mortgagee shall satisfy the within mortgage of record upon the transfer thereof by Mortgagor of title to the premises hereby secured and upon substitution by Mortgagor as additional collateral for the Mortgage Note secured hereby of an amount equal to one-half (1/2) of the then existing principal balance of said Mortgage Note, said substitution of collateral to be in accordance with the terms of a certain Separation, Support Property Settlement and Custody Agreement between the Parties hereto, dated the 14th day of May, 1980, which terms are incorporated herein by reference thereto. * * * This obligation is given as the same obligation *54 as set forth in a similar Mortgage Note of even date herewith for the same principal sum of $80,000.00, and payable on the same terms. The parties agree that there is only one basic obligation and that any payment received hereunder or thereunder shall be credited against both obligations. The attorneys representing both petitioner and Margaret during the divorce proceedings testified in their respective depositions that the focus of the negotiations leading up to the agreement was on a division f property. Indeed, neither attorney mentioned that there was any concern for a standard of support of Margaret in the negotiations. Mr. Beecher, who represented petitioner, testified as follows: Q. Okay, I remember at the beginning of your testimony you indicated that the negotiations were reflecting on a figure of $150,000, is that correct? A. Yes, Mrs. Hoover had offered to settle for $150,000 cash paid in advance of the settlement. I was instructed to counter that Mr. Hoover would agree to pay the $150,000, but only over a period in excess of ten years. Q. Why wouldn't he pay it in cash up front? A. Because he always intended and always wanted to be able to have the opportunity *55 to deduct as much of these payments as possible on his income tax returns. [4]
On his 1982 Federal income tax return, petitioner claimed a deduction under section 215(a) in the amount of $10,658 for amounts paid to Margaret. Respondent disallowed the deduction, and the issue is now before us. Section 215(a) allows a deduction for "amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year." Section 71, for our purposes here, provides that "the wife's gross income includes periodic payments * * * which are made * * * because of the marital or family relationship * * *." Sec. 71(a)(2). Generally "installment payments discharging a part of an obligation the principal sum of which is * * * specified in the * * * agreement shall not be treated as periodic payments." Sec. 71(c)(1). The exception to this general rule is that when "the principal sum * * * is to be paid * * * over a period ending *56 more than 10 years from the date of such * * * agreement, * * * the installment payments shall be treated as periodic payments * * * to the extent of 10 percent of the principal sum." Sec. 71(c)(2). Petitioner recognizes that the agreement called for the payment of a principal sum. He urges, however, that since the payments beginning in 1981 were made over more than a 10 year period, they qualify as periodic payments under section 71(c)(2). But the fact that the payments extend over more than 10 years does not necessarily and our inquiry. Section 71(a)(2) applies only to periodic payments made "because of the marital or family relationship" and does not apply to payments "in settlement of some property interest of the wife." Schottenstein v. Commissioner,75 T.C. 451, 456 (1980); sec. 1.71-1(b)(4), Income Tax Regs; H. Rept. 2333, 77th Cong., 2d Sess. p. 72, 1942-2 C.B. 372, 428. Thus, the gravamen of this case is the character of the payments -- whether the payments were to satisfy the property claims of Margaret. If payments were of this nature, they would be capital in nature and not included in Margaret's income or deductible by petitioner. Thompson v. Commissioner,50 T.C. 522, 525 (1968). *57 This question is essentially factual. In resolving this dispute, we, and other courts, have considered several objective factors -- viz, (1) the presence of a fixed sum, (2) whether the payments are related to the payor's income, (3) whether the payments are contingent on remarriage or death, (4) whether the payee relinquished property interests, (5) whether the payments are secured. [5]Yoakum v. Commissioner,82 T.C. 128, 140 (1984). In the circumstances here these objective factors militate heavily in favor of the conclusion that the payments were made in settlement of Margaret's property rights. Petitioner, however, points out that the agreement provided that payments were contingent on Margaret's living. On the other hand, we note that the mortgages have no such contingency and, indeed, provide that petitioner and his "Heirs, Devisees and Personal Representatives" are bound to pay Margaret, "her certain Attorneys, Personal Representatives, Legatees, Successors or Assigns." Exhibit 5-E and see Exhibit 9-I. To the extent that there is *58 a conflict between the instruments, we have no question that a court, based on this record, would resolve the issue by striking the contingency in the agreement. The attorneys negotiating for Margaret and petitioner testified that the focus was on a division of property, and it would be peculiar to have such a division contingent on survival. [6] In short, the survival provision in the agreement was simply an attempted legerdemain that has no legal significance here. We are further persuaded that these payments arise from the purchase of Margaret's interest in property by the fact that payments included interest on unpaid balance of the debt. Generally, payments for support, even when the total sum is certain, would not have a stated rate of interest. On the other hand, payments made to purchase interests in property routinely included interest on the unpaid balance. In sum, we find that the payments involved *59 did not arise from the marital relationship. [7]
In his pleading, petitioner contends that, if these payments were not deductible under section 215, then a deduction should be allowed under section 163 for that portion of the payment that represents interest on the obligation. Respondent concedes that *60 such a deduction should be allowed. Accordingly, Decision will be entered under Rule 155.
Footnotes
1. This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rules 180 et seq. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, and as in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise provided. ↩
3. Respondent also disallowed an investment tax credit claimed under section 38 in the amount of $122. Petitioner concedes that he is not entitled to the credit.↩
4. While the basis for the negotiations focused on $150,000, Margaret apparently had already received a certificate of deposit and cash that had a total value of $50,000 in 1980. The agreement is silent as to these assets.↩
5. We have also looked at the labels given the payments; however, the parties' characterization is never controlling.↩
6. We also recognize that the security instruments contain reference to the agreement. That reference, however, is only with regard to the possible substitution of the underlying collateral and apparently does not incorporate the agreement into the other instruments.↩
7. Petitioner also contends that the total amount received by Margaret far exceeded the value of the property given up. Under his computation Margaret received $95,000 in cash before considering the $80,000 paid in installments. He contends that the total value of the property surrendered was approximately $155,000, and that Margaret's interest was approximately one-half of that value. There were no appraisals of the real estate, and we are unsure that the "working figures" of the parties necessarily reflected the actual value of these properties. But more important we do not know the other claims on property that Margaret may have released. It also may be that the check and/or funds allegedly removed by Margaret from the safe-deposit box belonged to her. It was petitioner's burden to establish the factual predicates of this argument, and he has not carried that burden.↩