STIRTON OMAN, JR. and SHELBY B. OMAN, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Oman v. Commissioner
Docket Nos. 18878-82, 18879-82, 23803-82.
United States Tax Court
T.C. Memo 1984-357; 1984 Tax Ct. Memo LEXIS 317; 48 T.C.M. (CCH) 499; T.C.M. (RIA) 84357; July 12, 1984. William Waller, for the petitioners in docket Nos. 18878-82 and 18879-82. Marian F. Harrison, for the petitioner in docket No. 23803-82. Vallie C. Brooks and Charles W. Kite, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Calendar
Petitioners
Year
Deficiency
Stirton Oman, Jr.
1977
$13,475.58
and Shelby B. Oman
1978
9,473.05
Stirton Oman, Jr.
1976
9,213.00
Linda B. Oman
1977
4,377.58
1978
4,111.41
*319 The issues for decision are: (1) Whether portions of a tax refund claimed on a joint return of Stirton Oman, Jr., and Linda B. Oman received by Linda B. Oman are deductible by Stirton Oman, Jr., as alimony under section 215. [2]; and (2) whether payments of alimony in solido by Stirton Oman, Jr., to Linda B. Oman pursuant to a final divorce decree are includable in her income under section 71 and deductible by him under section 215. All of the facts have been stipulated and are found accordingly. Stirton Oman, Jr. (petitioner) and Shelby B. Oman, husband and wife, who resided in Nashville, Tennessee, at the time of the filing of their petition in this case, filed joint Federal income tax returns for the calendar years 1977 and 1978 with the Internal Revenue Service Center, Memphis, Tennessee. Petitioner filed his individual Federal income tax return for the calendar year 1976 with the Internal Revenue Service Center, Memphis, Tennessee. Linda B. Oman (Mr. Oman) who resided in Nashville, Tennessee, at the time of the *320 filing of her petition in this case, filed individual Federal income tax returns for the calendar years 1977 and 1978 with the Internal Revenue Service Center, Memphis, Tennessee. In early 1975, petitioner and his wife Linda B. Oman filed a joint Federal income return for the calendar year 1975 and claimed a refund which was attributable to his income and resulted from withholding and estimated tax payments made by him during 1975. On March 5, 1976, Mrs. Oman filed a petition for absolute divorce from petitioner in Davidson County, Tennessee. On April 30, 1976, the United States Department of Treasury issued a $31,623.30 refund check made payable to both petitioner and Mrs. Oman. That same day, Mrs. Oman deposited the check in her individual savings account at the Commerce Union Bank in Nashville, Tennessee. Subsequently, she withdrew from her individual savings account the following amounts: May 4, 1976
$1,500
June 8, 1976
2,000
June 25, 1976
2,000
Total
$5,500
Petitioner made demand on the Commerce Union Bank for the sum of $31,623.30. On July 30, 1976, the Commerce Union Bank filed an action for interpleader in the Chancery Court for Davidson County, *321 Tennessee. The bank alleged that Mrs. Oman had endorsed the refund check "For deposit only" and requested that it be deposited to her savings account; the bank at that time was unaware of the personal differences that had arisen between the Omans and accepted the deposit; Mrs. Oman had withdrawn $5,500 from the savings account; Stirton Oman, Jr., had made demand on the bank for the amount of the tax refund check; and the bank had paid into the registry of the court the sum of $26,462.30, including interest accrued on the sum held in the savings account, so the court could determine the respective rights of the Omans. On August 3, 1976, the Chancery Court assigned the interpleader to Circuit Judge Stephen North in order that he might hear both the Chancery Court proceeding and the Circuit Court proceedings regarding the Oman divorce. Judge North, acting for the Chancery Court, ordered the clerk of the court on August 3, 1976, to pay Mrs. Oman $5,500 from the $26,462.30 held in the registry of the Court. The judge characterized the payment as a pendente lite award for alimony, support and maintenance from July 30, 1976, through October 12, 1976. On October 4, 1976, Judge North ordered *322 the clerk and master of the Chancery Court to issue a check or draft payable to the First American National Bank of Nashville for all sums held by him as of that date, including any accrued interest, so the draft could be credited against the personal obligations of petitioner to such bank. On October 22, 1976, Judge North, as chancellor, issued a final decree closing the interpleader. Mrs. Oman received a total of $11,000 from the $31,623.30 Federal income tax refund consisting of the $5,500 she personally withdrew from her individual savings account containing the joint tax refund and the $5,500 she was awarded by the Chancery Court on August 3, 1976. On October 12, 1976, after a hearing, the Circuit Court of Davidson County entered an oral order awarding Mrs. Oman an absolute divorce from petitioner on the grounds of cruel and inhuman treatment. On October 26, 1976, the order and decree were reduced to writing. In pertinent part, the final decree ordered petitioner to pay child support of $1,000 per month for each child and to pay Mrs. Oman $1,000 per month alimony, commencing on November 1, 1976, and continuing thereinafter until she died or remarried. From October 15 to *323 November 1, 1976, petitioner was ordered to pay $1,500 for child support and alimony. The court also ordered petitioner to pay his ex-wife alimony in solido in the sum of $110,000, to be paid $10,000 per year commencing February 1, 1977, and continuing on the first day of February each succeeding year for a period of 11 years. The decree further provided: It is further ORDERED by the Court that in arriving at and determining the monies to be paid by the Defendant to the Plaintiff, the Court has taken into consideration and account the fund held by the Clerk and Master of Davidson County, Tennessee, in a cause therein pending by Commerce Union Bank versus the parties ti this cause, the same being Number A-7754, in which the Judge of the Fifth Circuit Court of Davidson County was designated as Chancellor to hear and determine that cause, this Court having heretofore directed that Five Thousand Five Hundred Dollars ($5,500.00) be awarded to the plaintiff as alimony pendente lite and that the Plaintiff prior to the institution of said Chancery litigation expended another Five Thousand Five Hundred Dollars ($5,500.00) for which this Defendant should be given credit as an additional *324 alimony payment, the balance of all funds paid in having been decreed and awarded to the Defendant as a credit against his obligations owing to the First American National Bank of Nashville. On October 22, 1976, petitioner filed a motion for a new trial and requested a modification of the final decree. Petitioner stated, in pertinent part, that the court erred in fixing the amount of alimony in solido and in dividing their property rights because the amount of alimony in solido and the division of their property rights exceeded 50 percent of petitioner's estate. Petitioner also stated that the court erred in fixing the child support and monthly alimony payments. On February 1, 1977, a final decree was entered after a rehearing of the matter and the $1,000-a-month alimony payments remained unchanged, but the child support payments were reduced and the amount petitioner was required to pay Mrs. Oman as alimony in solido was reduced to $91,500 with the payments to be made over a period of 9 years, as follows: On the last day of Feb. 1977
$21,500
On the last day of Feb. 1978
15,000
On the last day of Feb. 1979
15,000
On the last day of Feb. 1980
10,000
On the last day of Feb. 1981
5,000
On the last day of Feb. 1982
5,000
On the last day of Feb. 1983
5,000
On the last day of Feb. 1984
5,000
On the last day of Feb. 1985
5,000
On the last day of Mar. 1986
5,000
*325 The decree of February 1, 1977, provided that except as altered the provisions of the October 26, 1977, decree remained in force and effect. A petition for increase in child support and alimony was filed by Mrs. Oman on November 14, 1979. This request was based on the improvement of petitioner's earning capacity and increase in the needs and expenses of the minor children as well as the increase in the cost of living since the divorce decree of February 1, 1977. On September 11, 1980, petitioner filed a petition for reduction in alimony payments based on his inability to deduct, for income tax purposes, payments of alimony in solido made to Mrs. Oman pursuant to the divorce decree of February 1, 1977. As a result, he alleged the payments of alimony in solido were received by Mrs. Oman free on any tax liability and Mrs. Oman's cash benefits from the payments of alimony in solido far exceeded those contemplated by the parties at the time of their agreement. The Circuit Court for Davidson County, Tennessee, entered a memorandum opinion on August 11, 1982, increasing the amount of periodic alimony to $2,000 per month but refusing to decrease the amount of alimony in solido, pointing *326 out that the portion of the decree dealing with alimony in solido was final and could only be modified if mistake, surprise or excusable neglect existed. The court failed to find any mistake, surprise or excusable neglect which would justice relief. On their jointly filed Federal income tax returns for the calendar years 1977 and 1978, deductions of $34,200 and $27,000, respectively, were claimed by petitioner and Shelby Oman for alimony paid to petitioner's ex-wife. Respondent, in his notice of deficiency to petitioner and Shelby Oman for the calendar years 1977 and 1978, determined that these deductions for alimony to the extent of $21,500 and $15,000, respectively, were not allowable because it had not been established that any amounts in excess of $12,700 and $12,000 were deductible as alimony under section 215. On his 1976 Federal income tax return, petitioner claimed a $17,800 alimony deduction for payments made to his ex-wife during that year. Respondent, in his notice of deficiency issued to petitioner for the calendar year 1976, determined that the amount of $17,800 claimed as alimony was not allowable to the extent of $16,100 because it had not been established that *327 any amount in excess of $1,700 was expended for alimony and that no amount in excess of $1,700 was deductible under section 215. Therefore respondent increased petitioner's taxable income by $16,100. On her individual Federal income tax return for the calendar years 1977 and 1978, Mrs. Oman reported amounts of $12,700 and $12,000, respectively, as alimony received from her ex-husband. Respondent, in his notice of deficiency issued to Mrs. Oman for the calendar years 1977 and 1978, determined that payments totaling $34,200 and $27,000 for these respective years represented alimony includable in her income, increasing her taxable income from alimony by $21,500 and $15,000, respectively. Section 215 [3] allows a husband to deduct payments made to thw wife if those payments are includable in her gross income under section 71. [4] Section 71(a) provides in pertinent part that the wife must include in her gross income "periodic payments * * * in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband" under a divorce decree. *328 Petitioner contends that he is entitled in 1976 to a deduction of $11,000 under section 215 because the withdrawals totaling $5,500 made by his ex-wife from her individual savings account containing the joint tax refund and the $5,500 she received as an award of alimony pendente lite in the interpleader suit filed by the bank represented payments by him for her support and maintenance. Petitioner argues that the fact that Mrs. Oman withdrew the $5,500 from her savings account in which she had deposited the tax refund check prior to the entry of a divorce decree did not alter the deductibility of the payments. Petitioner further contends that Mrs. Oman's withdrawal of the money was ratified by the decree entered in the divorce proceedings on October 26, 1976. Petitioner further contends that the court in the divorce decree characterized the $5,500 that Mrs. Oman withdrew from the account containing the joint tax refund as a payment for her support and maintenance and therefore the payment satisfied the statutory requirement for alimony. Petitioner points out that the second payment of $5,500 was designated by the court as alimony pendente lite. Petitioner argues that these payments *329 from the tax refund check should not be considered in isolation and treated as installments of a lump sum, but should be viewed in the context of the entire divorce proceedings and in conjunction with the alimony payments which followed the divorce decree. Respondent contends that the payments were in settlement of a property rights dispute between petitioner and his ex-wife and were not in discharge of any obligation imposed on petitioner "because of the marital or family relationship." Therefore, respondent contends, the payments were capital in nature and not deductible by petitioner on his 1976 return under the provisions of section 1.71-1(b)(4), Income Tax Regs. Respondent contends that petitioner's ex-wife had some property rights in the refund check which was made out to both husband and wife. Petitioner and Mrs. Oman, as husband and wife, respondent contends, each had a separate interest in the refund which should have been divided according to his or her respective property rights in the refund. In the alternative, rspondent contends that even if the proceeds of the refund check did belong to petitioner and the $11,000 constituted alimony, the payment did not qualify as *330 "periodic payments" within the meaning of section 71. Respondent contends that the $11,000 constituted a one-time lump-sum payment discharging a principal sum specified in the decree, that the sum was subject to no contingencies whatsoever and thus failed to qualify as periodic payments deductible as alimony under section 71(a)(1). It is well settled that "[s]pouses filing a joint return have separate interests in any overpayment, the interest of each depending on his or her income, i.e., an overpayment is apportionable to a spouse to the extent that he or she contributed to the overpaid tax." Rosen v. United States,397 F.Supp. 342, 343 (E.D.Pa. 1975); Gens v. United States,615 F.2d 1335, 1342 (Ct.Cl. 1980). If, however, a spouse has not earned any of the income reported on the joint return or contributed to the overpayment, that spouse is not entitled to any part of the joint tax refund. Gens v. United States,673 F.2d 366 (Ct.Cl. 1982); [5]In re Wetteroff,324 F.Supp. 1365, 1369 (E.D.Mo. 1971), affd. 453 F.2d 544 (8th Cir. 1972); In re Illingworth, an unreported case ( D.Or. 1956, 51 AFTR 1512, 56-2 USTC par. 10,004). *331 Cf. Dolan v. Commissioner,44 T.C. 420 (1965). We find that the filing of the 1975 joint return by petitioner and Mrs. Oman did not vest in Mrs. Oman any interest in the tax refund because she had no wages on which tax had been withheld and did not earn any of the income reported on the 1975 joint return or contribute to the overpayment. Gens v. United States,supra; In re Wetteroff,supra. The $11,000 received by Mrs. Oman from the income tax refund constitutes a payment to her from petitioner's property. Whether or not petitioner is entitled to a deduction for the amounts his ex-wife received from this tax refund depends on the character of the payments she received. Petitioner is entitled to a deduction only if the amounts his ex-wife received constituted alimony as defined in section 71(a). Mrs. Oman's withdrawals on May 4, June 8, and June 25, 1976, from her individual savings account which contained the amount received as a refund with respect to the joint income tax return totaled $5,500. These withdrawals occurred prior to the time a decree of divorce or of *332 separate maintenance had imposed a legal obligation on petitioner to support Mrs. Oman. In order for the payments to be deductible as alimony under section 215, the obligation to pay must be incurred or imposed "under the decree or under a written instrument incident to such divorce or separation." Section 71(a). At the time of Mrs. Oman's withdrawal of $5,500 from her individual savings account, she had only filed a petition for divorce from her husband. A divorce or separation decree or a "written instrument incident to such divorce or separation" did not exist at the time of the withdrawals. The final divorce decree was not entered until October 1976. Thus these payments do not constitute alimony for purposes of section 71(a), and petitioner is not entitled to a deduction for the amount of those payments unless the provision in the divorce decree of October 26, 1976, giving petitioner credit as an additional alimony payment for the $5,500 that his ex-wife had withdrawn from her individual savings account containing the amount received as a tax refund, causes the amount to be a deductible alimony payment. The October 26, 1976, decree stated "that the Plaintiff [Mrs. Oman] *333 prior to the institution of said Chancery litigation expended another Five Thousand Five Hundred Dollars ($5,500.00) for which this Defendant [petitioner] should be given credit as an additional alimony payment." In our view, this decree in effect relieved Mrs. Oman of any obligation to reimburse petitioner for his funds which she had appropriated by providing that the amount be considered additional alimony. The question therefore is whether the grant of $5,500 to Mrs. Oman, by relieving her of the obligation to repay petitioner this amount, constitutes an alimony payment which petitioner is entitled to deduct under section 215. Petitioner attempts to equate the October 26, 1976, decree to a "nunc pro tunc" order of a State court either correcting or changing a prior State court's order. See, e.g., Gordon v. Commissioner,70 T.C. 525 (1978); Newman v. Commissioner,68 T.C. 494 (1977). These cases are factually different from the present case and are not helpful in disposing of this case.The issue here is whether the $5,500 which was recognized as alimony in the divorce decree of October 26, 1976, was a periodic payment. Since the various withdrawals *334 had been made prior to any decree, the recognition of the amount in the divorce decree was a lump sum recognition and did not relate back to the separate withdrawals. Therefore, the $5,500 was not a periodic payment within the meaning of section 71(a) and not deductible by petitioner under section 215. Norton v. Commissioner,16 T.C. 1216, 1218 (1951), affd. 192 F.2d 960 (8th Cir. 1951). Whether the $5,500 payment made by petitioner from the tax refund pursuant to the order of the Chancery court constitutes alimony for Federal income tax purposes should be determined from the surrounding facts and circumstances. Gammill v. Commissioner,73 T.C. 921, 926 (1980), affd. 710 F.2d 607 (10th Cir. 1982). The labels attached to such payments by the parties in their agreement or the characterization of such payments by the State court are not conclusive. Martin v. Commissioner,73 T.C. 255, 262 (1979), and cases there cited. Thus, the State court's characterization of the $5,500 payment to Mrs. Oman as a pendente lite award for alimony, support and maintenance is not controlling. We agree with respondent's *335 position that the $5,500 payment of alimony pendente lite to Mrs. Oman does not qualify for an alimony deduction under section 215 because this payment does not constitute alimony as provided in section 71. Section 71(a) applies only to "periodic payments * * * in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband" under a divorce decree. The payments must be made in recognition of the general obligation to support which is made specific by the decree. Section 1.71-1(b)(4), Income Tax Regs. Here, the payment was clearly imposed on petitioner pursuant to the August 3, 1976, order for support. This order qualifies as a "written instrument incident" to a divorce for purposes of section 71(a)(1). An order of alimony pendente lite qualifies as a "decree" for purposes of satisfying the prerequisite that the payments be made under a "decree * * * requiring the husband to make the payments for her support or maintenance." Section 71(a)(3). Korman v. Commissioner,36 T.C. 654 (1961), affd. 298 F.2d 444 (2d Cir. 1962). The issue left for us to resolve is whether the $5,500 payment *336 was "periodic." In order for payments to be "periodic," they must be made at recurring times over an extended period. Norton v. Commissioner,16 T.C. 1216, 1218 (1951), affd. 192 F.2d 960 (8th Cir. 1951). It is clear that the one-time payment as ordered by the court in this case was not paid over a period of time and was not paid in fixed intervals. We, therefore, conclude that the $5,500 payment was not a periodic payment within the meaning of section 71(a). The amount is not includable in the gross income of the wife and is not, under section 215, allowable as a deduction to petitioner. We conclude that for the year 1976 petitioner is not entitled to an alimony deduction for the $5,500 payment which the Chancery Court characterized in the final decree as alimony pendente lite. The next issue for our consideration is whether amounts paid as alimony in solido to Mrs. Oman by petitioner in 1977 and 1978 pursuant to their agreement incorporated in the final decree entered on February 1, 1977, were received by Mrs. Oman as a property settlement or as alimony. Petitioner contends that the payments of alimony in solido were periodic payments because *337 they were subject to the contingency of being increased or decreased by the divorce court under Tennessee law, and are therefore deductible by him under section 215. While the parties all agree that the amounts of $12,700 in 1977 and $12,000 in 1978 were paid by petitioner to Mrs. Oman as alimony, respondent and Mrs. Oman contend that the balance of the payments made by petitioner to Mrs. Oman in these years was not deductible by petitioner or includable by Mrs. Oman in her income. Respondent argues that the payments of alimony in solido under the decree would not qualify as periodic payments because the lump sum which was payable over a period of less than 10 years was not subject to any contingencies as provided by section 1.71-1(d)(3)(i), Income Tax Regs., and was not in the nature of alimony or an allowance for support as provided in section 1.71-1(b)(4), Income Tax Regs.
Mrs. Oman contends that the payments of alimony in solido do not constitute periodic payments of alimony taxable as income to her because the entire amount was to be paid over a period of less than 10 years, and the award was final and not modifiable under Tennessee law. The payments here in issue are *338 clearly installment payments. Section 71(c)(1) provides that "installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree * * * shall not be treated as periodic payments." Section 71(c)(2) excepts from the provisions of section 71(c)(1) payments which by the terms of the decree are to be made over a period ending more than 10 years from the date of the decree. If the payments are to be made over a period ending 10 years or less from the date of the divorce decree, as in the instant case, section 1.71-1(d)(3)(i), Income Tax Regs., provides that they will be considered "periodic payments" if (1) the payments are subject to one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse; and (2) the payments are in the nature of alimony or an allowance for support. [6]
*339 The divorce decree of October 26, 1976, was revised by the divorce decree of February 1, 1977, with respect to the payment of a specific sum as alimony in solido.The relevant portions of the decrees are: Divorce Decree of October 26, 1976
It is further ORDERED, that the Defendant, Stirton Oman, Jr., shall pay to the Plaintiff, Linda Blackwood Oman, and alimony in solido the sum of One Bundred Ten Thousand Dollars ($110,000.00) to be paid $10,000.00 per year for eleven (11) years, commencing on the 1st day of February, 1977, and continuing on the 1st day of February each succeeding year for a period of eleven (11) years. Revised Divorce Decree of February 1, 1977
The Defendant shall pay to the Plaintiff, Linda Blackwood Oman, as alimony in solido the sum of Ninety-One Thousand Five Hundred Dollars ($91,500.00) payable as follows: On the last day of February, 1977, the sum of Twenty-One Thousand Five Hundred Dollars ($21,500.00); on the last day of February, 1978 and 1979, the sum of Fifteen Thousand Dollars ($15,000.00); on the last day of February, 1980, the sum of Ten Thousand Dollars ($10,000.00); on the last day of February, 1981 through 1985, the sum of *340 Five Thousand Dollars ($5,000.00); and on the last day of March, 1986, a final payment of Five Thousand Dollars ($5,000.00). For the payments in question to be considered periodic, section 1.71-1(d)(3)(i)(a) and (b), Income Tax Regs., requires that such payments be for support and be subject to certain designated contingencies. In the instant case, the divorce decree contained no statement of the purpose of the payments and provided for no contingencies that would result in a cessation of the payments.However, section 1.71-1(d)(3)(i)(a) and (ii) (a), Income Tax Regs., provide that payments which are subject to the contingencies of death of either spouse, remarriage of the wife, or change in economic status imposed by local law are to be considered periodic payments if they are payments for support. Yoakum v. Commissioner,82 T.C. 128, 136 (1984). Under Tennessee law, a distinction exists between alimony in gross or alimony in solido and alimony in futuro. Alimony in solido, as provided in Tenn. Code Ann. sec. 36-821 (1977), [7] is lump-sum alimony or the award of a definite sum of money. The sum is payable in installments and the payments run *341 for a definite length of time. The sum is payable in full, regardless of future events such as the death of the husband or the remarriage of the wife. Spalding v. Spalding,597 S.W.2d 739, 741 (Tenn. App. 1980), cert. denied (1980) (citing 24 Am.Jur.2d Divorce & Separation sec. 614 (1966)).
In Spalding, the payments were similar to the ones in the instant case and the court characterized the payments as alimony in solido. The court held that an award of $2,000 per month for 108 months or 9 years with payments beginning on a specified date and continuing "until the entire amount mentioned above has been paid" was an award of alimony in solido, *342 rather than in futuro. As a result of the finality of an award of alimony in solido, the court refused to modify the award after the expiration of 30 days. Likewise, in Phillips v. Webster,611 S.W.2d 591, 593 (Tenn. App. 1980), cert denied (1981), the court found that alimony in solido existed when the husband agreed to pay the wife $100,000 in quarterly installments of $2,500 over a 10-year period. The amounts were payable regardless of future events such as the death of the husband or the remarriage of the wife.Thus the award was not subject to change by the court after the decree became final. In McKee v. McKee,655 S.W.2d 164, 165 (Tenn. App. 1983), cert. denied (1983), the court stated that the determining factor in distinguishing alimony in futuro from alimony in solido is the definiteness or indefiniteness of the amount to be paid. Payments with a definite sum specified in the decree constitute alimony in solido in Tennessee. McKee v. McKee,supra at 165. The payments made in the instant case constitute alimony in solido because the amount petitioner was ordered to pay his ex-wife was definite, ascertainable, and *343 not dependent upon a future contingency that might terminate petitioner's obligation to pay. The decree clearly stated that Mrs. Oman was to receive the sum of $91,500 payable over the 9-year period as specified in the decree and no contingencies were mentioned. Under Tennessee law, an award of alimony in solido is not subject to contingencies and cannot be modified by a court after the expiration of 30 days unless mistake, inadvertence, surprise, or excusable neglect exists. Tenn. R. Civ. P. 60. [8]Aleshire v. Aleshire,642 S.W.2d 729, 732 (Tenn. App. 1981), affd. Tenn. Sup. Ct. (1982); Bray v. Bray,631 S.W.2d 136 (Tenn. App. 1981), cert. denied (1981).
In Kent v. Commissioner,61 T.C. 133 (1973), this Court reviewed an Arizona divorce decree providing for a $600-permonth award of alimony in gross for 54 months. [9] The decree did not subject the *344 payments to any contingencies which would terminate the husband's obligation to pay the wife.Alimony in gross in Arizona is the statutory equivalent of alimony in solido in Tennessee. State law did not impose any contingencies on the payments from husband to wife and alimony in gross could not be modified by the State Court. We stated therein that "an allowance or award of alimony in gross is a vested right which is not affected by future events, such as the death of either party." 61 T.C. at 140. Thus, the payment did not constitute periodic payments of alimony and we denied the husband's claimed deduction. See also Crouser v. Commissioner,73 T.C. 1113 (1980), affd. 668 F.2d 239 (6th Cir. 1981). Petitioner relies on Naron v. Naron,218 Tenn. 125, 401 S.W. 2d 766 (1966). *345 However, the facts in the Naron case distinguish it from this case. The divorce decree in Naron awarded the wife installment alimony for a period of 20 years. Unlike the divorce decree in the instant case, the decree in Naron expressly stated that the award was for the wife's "care, support, and maintenance." 401 S.W.2d at 768. After review of the decree in Naron, the court stated that the decree was not an award in solido but constituted alimony that was designated for the support of a husband's wife and children. 401 S.W.2d at 768. In the instant case, the decree did not mention that the payments of alimony in solido were for the care, support, and maintenance of petitioner's ex-wife. Rather, there was a separate alimony provision in the decree to take care of these needs. The other authorities relied on by petitioner are also distinguishable since in each of those cases there was a contingency provided either in the decree or by local law which could cause the payments to cease. We conclude that the payments made on the $91,500 award of alimony in solido provided for in the divorce decree in this case were installment payments of *346 a fixed amount which were to be made over a period of less than 10 years. Therefore, these payments were not periodic payments of alimony under section 71(a) and are not deductible by petitioner under section 215. Finally, the payments made by petitioner on the $91,500 award of alimony in solido were not payments for Mrs. Oman's support. Payments for support are termed alimony in futuro in Tennessee, Tenn. Code Ann. sec. 36-820 (1977), and the obligation to make such payments ends with the death of the husband. Brandon v. Brandon,175 Tenn. 463, 135 S.W.2d 929, 930 (1940). The payments in this case, on the other hand, constitute alimony in solido, according to Tenn. Code Ann. sec. 36-821 (1977), due to the definiteness of the amount to be paid. Spalding v. Spaliding,597 S.W.2d 739, 741-42 (Tenn. App. 1980), cert. denied (1980); Aleshire v. Aleshire,642 S.W.2d 729 (Tenn. App. 1981), affd. Tenn. Sup. Ct. (1982). In order for the payment in question to be considered periodic, section 1.71-1(d)(3)(i)(b), Income Tax Regs., requires not only that such payments be subject to specified contingencies, but also that they be for *347 support. Factors which indicate that payments are in the nature of a property settlement rather than a support allowance are set forth in Beard v. Commissioner,77 T.C. 1275, 1284-85 (1981). See also Yoakum v. Commissioner,supra, at 140. Most of the factors listed in the Beard case as indicating that the payments are in the nature of a property settlement are present in this case. In this case, a separate provision was made for Mrs. Oman's support, and the record indicates that the parties intended an equal division of the property accumulated during their marriage. Tenn. Code Ann. sec. 36-821 (1977), provides for a decree by the court to a wife of part of the property of her husband as well as a part of the jointly held property. There are no hard and fast rules governing the amount of property to be awarded to the wife, but in circumstances where the divorce was awarded on the grounds of cruel and inhuman treatment, as was the divorce in the instant case, the Tennessee courts have approved an equal division of the property. See Shackleford v. Shackleford,611 S.W.2d 598, 601 (Tenn. App. 1980), cert. denied (1981). *348 The pleadings and the divorce decree reflect the parties' intention that the payments of alimony in solido plus the other property awarded to petitioner's ex-wife equal aproximately one-half of the property accumulated by the parties during marriage. For example, in his motion for a new trial, petitioner stated that the court erred in fixing the amount of alimony in solido and division of the couple's property rights because the award was in excess of 50 percent of petitioner's net estate. This reflects the parties' intention that Mrs. Oman's receipt of alimony in solido plus other property equal about one-half of the property accumulated during the marriage. The record does not reflect that the need of petitioner's ex-wife was taken into consideration in determining the amount of the alimony in solido. Rather, the record reflects that a division of property was intended. The needs of Mrs. Oman and the couple's two children were considered when the court awarded periodic alimony of $1,000 a month and child support payments. We hold that the payments which were payable over a period of less than 10 years were not periodic because no contingencies which would change the amount *349 of the payments or cause them to cease existed in the final divorce decree or were imposed by State law, and the payments were not in the nature of alimony or an allowance for support. Therefore, the payments are instaliment payments discharging a principal sum specified in the divorce decree. The payments are not includable in Mrs. Oman's income under section 71 and petitioner is not entitled to deduct such payments from his income under section 215. Decisions will be entered for the respondent in docket Nos. 18878-82 and 18879-82.
Decision will be entered for the petitioner in docket No. 23803-82.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Stirton Oman, Jr., docket No. 18879-82; and Linda B. Oman, docket No. 23803-82.↩
2. Unless otherwise noted, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
3. Section 215(a) provides in pertinent part that-- (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income. ↩
4. Section 71(a) provides that-- (a) General Rule.-- (1) Decree of divorce or separate maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written separation agreement.--If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. (3) Decree for support.--If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.↩
5. See also Rev. Rul. 80-7, 1980-1 C.B. 296↩.
6. Sec. 1.71-1(d)(3)(i) and (ii), Income Tax Regs., provides that-- (3)(1) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support. (ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71(a) regardless of whether-- (a) The contingencies described in subdivision (i)(a) are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, or (b) The aggregate amount of the payments to be made in the absence of the occurrence of the contingencies described in subdivision (i)(a) of this subparagraph is explicitly stated in the decree, instrument, or agreement or may be calculated from the face of the decree, instrument, or agreement, or (c↩) The total amount which will be paid may be calculated actuarially.
7. Sec. 36-821 of the Tenn. Code Ann. provides as follows: 36-821. Portion of husband's estate decreed to wife.--In such case, the court may decree to the wife such part of the husband's real and personal estate as it may think proper. In doing so, the court may have reference and look to the property which the husband received by his wife at the time of the marriage, or afterwards, as well as to the separate property secured to her by marriage contract or otherwise.↩
8. Rule 60 of the Tennessee Rules of Civil Procedure, is the counterpart of Rule 60, Federal Rules of Civil Procedure. Rule 60↩ permits the modification of judgments only for clerical mistakes, inadvertence, excusable neglect and fraud.
9. This Court considered a Tennessee divorce decree containing an award of alimony in solido in Estate of Thoda v. Commissioner,T.C. Memo. 1979-219↩. Therein we held that installment payments of a specific sum of alimony in solido were in the nature of a property settlement rather than alimony and were not taxable to the wife under section 71 nor deductible by the husband under section 215.