RUTHANN M. HEFFRON, F.K.A. RUTHANN M. NEWSOM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CHRISTOPHER AND SUZ ANN MURLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heffron v. Commissioner
Docket Nos. 14766-93, 14944-93
United States Tax Court
T.C. Memo 1995-253; 1995 Tax Ct. Memo LEXIS 255; 69 T.C.M. (CCH) 2849; June 12, 1995, Filed *255 Decisions will be entered for petitioner in docket No. 14766-93 and for respondent in docket No. 14944-93. For Ruthann M. Heffron, f.k.a. Ruthann M. Newsom, Petitioner: Donald J. Meyer, Jr.
For Christopher Murley and Suz Ann Murley, petitioners: Robert F. Barnes, Jr.
John J. Boyle, for respondent: John J. Boyle. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: These consolidated cases were heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. [1]
By separate notices of deficiency, respondent determined deficiencies in petitioner Ruthann M. Heffron's, f.k.a. Ruthann M. Newsom's (Ms. Heffron), 1989 and 1990 Federal income taxes in the respective amounts of $ 6,457 and $ 5,292, and in petitioners Christopher and Suz Ann Murley's 1989 and 1990 Federal income taxes in the respective amounts *256 of $ 8,351 and $ 3,240. These cases have been consolidated for purposes of trial, briefing, and opinion. The sole issue for decision is whether payments made by Christopher Murley (Mr. Murley) to Ms. Heffron were alimony as defined by section 71. Some of the facts have been stipulated and are so found. The stipulations of facts and attached exhibits are incorporated herein by this reference. At the time the petitions were filed in these cases, Ms. Heffron resided in Cincinnati, Ohio, and Mr. Murley resided in Harrison, Ohio. Mr. Murley and Ms. Heffron were married on August 10, 1985. During their marriage, Mr. Murley owned and operated Better Telephone & Technology, Inc. Ms. Heffron was an active member of the military stationed in Germany from 1979 until 1987. Upon her return to the United States, she obtained employment as an officer with the City of Harrison Police Department. Ms. Heffron and Mr. Murley lived in a home titled in Mr. Murley's father's name at 180 Countryview Drive, Harrison, Ohio. They had no children. On February 14, 1989, Mr. Murley filed for divorce. In September of that year, the Court of Common Pleas, Division of Domestic Relations, Hamilton County, *257 Ohio, approved an agreement (the agreement) between Mr. Murley and Ms. Heffron "designed to amicably resolve all issues of property incident to" their pending divorce. The agreement provided: I. REAL PROPERTY
The parties own no real estate of any kind. Parties acknowledge that the marital residence at 180 Countryview Drive, Harrison, Ohio 45030 is leased property in which they hold no interest.
II. PERSONAL PROPERTY
A. The parties will divide all personal property located at their marital residence at 180 Countryview Drive, Harrison, Ohio 45030 on Friday, September 8, 1989 at 9:00 a.m. B. Christopher Murley is to receive all interest in Better Telephone & Technology, Inc., an Ohio Corporation, and Ruthann Murley explicitly waives any interest in Better Telephones & Technology, Inc. which she may have in said company. C. Christopher Murley agrees to pay to Ruthann Murley the sum of Ten Thousand Dollars and .00/100 ($ 10,000.00), payable as follows: i. $ 1,000.00 upon signing of this agreement; ii. $ 3,000.00 upon Ruthann Murley vacating the premises at 180 Countryview Road, Harrison, Ohio 45030 on September 8, 1989 and returning said premises to Christopher *258 Murley in good condition. iii. $ 3,000.00 payable one year from date of decree. iv. $ 3,000.00 payable two years from date of decree. It is expressly understood by the parties that these foregoing sums payable to Ruthann Murley are considered alimony and said obligations shall not be dischargeable in any bankruptcy proceeding of any nature by Christopher Murley. [Emphasis added.] D. Both parties agree that each waives any interest he/she may have in properly [sic] held by the other after September 8, 1989.
III. DEBTS
A. Christopher Murley agrees to pay the following marital obligations; and to indemnify and hold Ruthann Murley harmless thereon: i. Sears in the amount of $ 2,590.48; ii. Citibank Mastercard in the amount of $ 1,874.32; iii. USAA Mastercard in the amount of $ 2,439.91; iv. Discover Card in the amount of $ 1,331.23; v. Gem Visa in the amount of $ 1,336.23; vi. First Atlantic Visa and Mastercard in the amount of $ 317.63; vii. Bank One Visa in the amount of $ 1,286.64; viii. Citibank Visa in the amount of $ 1,941.48; ix. Jewish Hospital in the amount of $ 2,436.65; x. J. B. Plunkett, M.D. in the amount of $ 4,445.00; xi. *259 Better Telephone & Technology, Inc. in the amount of $ 21,060.31; xii. Mary K. Murley in the amount of $ 29,630.69; xiii. Provident Bank in the amount of $ 1,778.99; B. Any other debts are the responsibility of the party in whose name such debt has been incurred.
* * * An addendum regarding the debts assumed by Mr. Murley was later added to the agreement. This addendum provided: If these are not the current balances on these obligations, Christopher Murley shall be liable for the current balances. Christopher Murley's obligation to hold Ruthann Murley harmless on these debts shall constitute additional alimony to her and shall be nondischargeable in bankruptcy.
Both Ms. Heffron and Mr. Murley, as well as their attorneys, signed the addendum. When the divorce decree was entered by the Court on November 13, 1989, the entire agreement was incorporated therein. Each of the credit card accounts listed in the agreement was under the name of Mr. Murley and most of the debt was incurred on behalf of Better Telephone and Technology, Inc. Ms. Heffron incurred only the obligations to J.B. Plunkett, M.D., the Jewish Hospital, and a small portion of the credit card balances. *260 Pursuant to section II.C. of the agreement, Mr. Murley paid Ms. Heffron $ 4,000 in 1989 and $ 2,677 in 1990. Ms. Heffron reported these amounts as alimony income on her 1989 and 1990 Federal income tax returns. On his 1989 and 1990 Federal income tax returns, Mr. Murley claimed deductions for alimony payments in the amounts of $ 27,031 and $ 21,613, respectively. Mr. Murley contends that the difference in each year between the amount paid to Ms. Heffron and the amount deducted on his return reflects the debts he paid each year on behalf of Ms. Heffron pursuant to section III.A. of the agreement. Ms. Heffron did not report the difference as alimony income on her returns. In her notices of deficiency, respondent challenged both Mr. Murley's and Ms. Heffron's treatment of the debt payments. Respondent determined that Mr. Murley failed to establish that the payments were deductible as alimony under section 215, or that he actually made the payments during the taxable years at issue. [2] With regard to Ms. Heffron, respondent determined that the difference in each year ($ 23,031 for 1989 and $ 18,936 for 1990) between the amount reported by Mr. Murley and the amount reported by Ms. *261 Heffron was alimony, and, therefore, was includable in Ms. Heffron's gross income under section 71. At trial, respondent took no position on the issues in these cases other than to request consistent treatment for both parties. [3]
Under section 215, payments are deductible as alimony or separate maintenance if those payments are includable in the recipient's gross income under section 71. Yoakum v. Commissioner, 82 T.C. 128, 134 (1984). Section 71(b) provides a four-step inquiry for determining *262 whether a cash payment under a written agreement is alimony. The payments made by Mr. Murley to, or on behalf of, Ms. Heffron will be considered alimony only if all four criteria are satisfied. The first criterion is that the payment must be received by, or on behalf of, a spouse or former spouse under a divorce or separation instrument. Sec. 71(b)(1)(A). The term "divorce or separation instrument" includes a decree of divorce. Sec. 71(b)(2)(A). Ms. Heffron does not dispute that this requirement is satisfied; however, she does argue that the majority of the debts allegedly paid were incurred by Mr. Murley on account of his business. The second criterion is that the agreement cannot designate that the payment is not includable by the payee spouse or deductible by the payor spouse. Sec. 71(b)(1)(B). The agreement in this case does not so designate. The third criterion is that the payee and payor spouses cannot be members of the same household when the payment is made. Sec. 71(b)(1)(C). The parties in the instant case also concede that this requirement is satisfied. The fourth criterion is that the payor spouse must not be liable for the payment under the agreement after *263 the death of the payee spouse. Sec. 71(b)(1)(D). The divorce decree in this case does not indicate whether Mr. Murley's liability to pay the debts on behalf of Ms. Heffron would terminate in the event of her death or remarriage. Thus, the Court must look to State law for guidance. Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987). Under the applicable State law, i.e., the law of Ohio as in effect before 1991, an award of "alimony" can include two components: one reflecting a division of marital assets, the other consisting of payments for sustenance and support. See Kaechele v. Kaechele, 35 Ohio St. 3d 93, 95, 518 N.E.2d 1197 (1988); Cherry v. Cherry, 66 Ohio St. 2d 348, 352, 421 N.E.2d 1293, 1297 (1981). To make such an award, a court may divide up the marital property and then consider the factors under Ohio Rev. Ann. Code (Anderson 1989) section 3105.18(B) to determine the amount of sustenance alimony. See Holcomb v. Holcomb, 44 Ohio St. 3d 128, 541 N.E.2d 597 (1989). *264 Payments made pursuant to a property settlement in a divorce decree ordinarily do not terminate upon the payee spouse's death or remarriage. St. Clair v. St. Clair, 9 Ohio App. 3d 195, 197, 459 N.E.2d 243, 245 (1983); Zimmie v. Zimmie, 11 Ohio St. 3d 94, 97-98, 464 N.E.2d 142, 146 (1984). In the agreement involved here, Mr. Murley's obligation to hold Ms. Heffron harmless from the debts listed in section III.A. is described as "additional alimony to her". However, the agreement does not specify that Mr. Murley's obligation would cease upon Ms. Heffron's death or remarriage. Both Mr. Murley and Ms. Heffron remarried shortly after the divorce became final. Most of the debts listed in the agreement were those of Mr. Murley's own business, and he continued to pay them off after Ms. Heffron's remarriage. Indeed, the agreement obliged him to keep making the payments even if he went into bankruptcy, whereas alimony typically is subject to modification when the payor suffers an impairment of his earning power. Based on the record, we conclude that Mr. Murley's obligation to pay the debts listed *265 in the agreement and to hold Ms. Heffron harmless on such debts was intended to be unconditional, and would not terminate upon her remarriage or death. See Cunningham v. Commissioner, T.C. Memo. 1994-474. Mr. Murley contends that we lack jurisdiction to determine the character of the payments for Federal tax purposes. He argues that the Court of Common Pleas made a "finding" that the payments were alimony and that such finding is entitled to the full faith and credit of this Court pursuant to 28 U.S.C. 1738. We disagree. First, the Court of Common Pleas did not make a "finding" that the payments were alimony; it merely incorporated into its divorce decree an agreement drafted by the parties. Second, neither the divorce decree nor the agreement incorporated therein directly addressed the tax consequences of the payments to either Mr. Murley or Ms. Heffron. The characterization of these payments for Federal tax purposes is within our jurisdiction, and Mr. Murley's argument to the contrary is without merit. Mr. Murley similarly argues that because his obligation to hold Ms. Heffron harmless against the debts *266 was referred to as "additional alimony" in the addendum to the agreement, his payments to satisfy those debts are alimony within the meaning of section 71, and, therefore, are deductible by him under section 215. He argues that Ms. Heffron, having signed the agreement, is estopped from arguing that the payments are other than alimony. Under the applicable Ohio law, however, the term "alimony" included a division of marital property, as well as sustenance payments. We do not find the designation of Mr. Murley's obligation as "alimony" in the agreement's addendum to be conclusive. See Cunningham v. Commissioner, supra.Rather, we attach more weight to the fact that Mr. Murley continued to pay the debts after Ms. Heffron remarried. We infer that his liability for the debts was intended likewise to continue without regard to other events that might change or eliminate her need for support and maintenance. Our conclusion as to the unconditional character of his liability is further supported by the fact that the majority of these debts was related to and incurred on behalf of his own business. Ms. Heffron testified that Mr. Murley's agreement to *267 pay the debts was in the nature of a property settlement, forming part of the consideration for her waiver of any rights to or interest in his business. We find Ms. Heffron's testimony credible. Based on the entire record, we find that the payments in question are not alimony because they fail to meet the condition of section 71(b)(1)(D). As such, the payments are not includable in the gross income of Ms. Heffron and are not deductible by Mr. Murley. Decisions will be entered for petitioner in docket No. 14766-93 and for respondent in docket No. 14944-93. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. We find it unnecessary to address whether Mr. Murley actually made the payments on the debt pursuant to the agreement.↩
3. The Commissioner's practice of issuing inconsistent deficiency notices in such circumstances in order to protect the Government's right to tax revenue is recognized as a valid practice. See, e.g., Gerardo v. Commissioner, 552 F.2d 549, 555-556 (3d Cir. 1977), affg. in part and revg. in part T.C. Memo. 1975-341↩.